DANIEL L. WARSHAW (Bar No. 185365)
dwarshaw@pswplaw.com
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

JAMES J. PIZZIRUSSO (admitted pro hac vice)
jpizzirusso@hausfeldllp.com
**HAUSFELD, LLP**
1700 K Street NW
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*[Additional Plaintiffs Counsel Listed on Signature Page]*
Attorneys for Plaintiffs and the Proposed Class

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

LORA AND CLAY WOLPH, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

ACER AMERICA CORPORATION, a California corporation,

Defendant.

CASE NO. CV-09-01314 JSW

(Assigned to the Honorable Jeffrey S. White)

**CLASS ACTION**

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**REDACTED VERSION**

[Complaint Filed: March 25, 2009]

Date: March 18, 2011
Time: 9:00 a.m.
Crtrm.: 11

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT ....1

II. NATURE OF THE CASE ....2

A. The Wolphs' Problems With Their Acer Notebook ....2

B. Acer's Defective Notebooks Are Marketed and Sold With Insufficient Memory to Operate Vista Premium ....4

1. Plaintiffs' Experts Confirm That the Defective Nature of the Acer Notebooks Can be Established and Adjudicated on a Class-Wide Basis ....5

(a) Ronald Alepin ....6

(b) Todd Stefan ....8

2. Common Evidence Supports Plaintiffs' Experts' Conclusions that 1 GB of Shared Memory is Insufficient to Run Vista Premium. ....9

C. Defendants Have Made Uniform Misrepresentations Regarding the Ability of the Defective Notebooks to Operate Vista Premium ....13

III. CLASS CERTIFICATION IS APPROPRIATE ....13

A. Choice of Law Principles Require Application of California Law to Plaintiffs' Claims ....14

B. Class Actions Are Important Vehicles to Obtain Small Value Recovery. ....16

C. Plaintiffs Satisfy the Requirements of Federal Rule of Civil Procedure 23(a) ....16

1. The Class is Numerous and Ascertainable ....17

2. The Plaintiffs' Claims Arise From a Common Nucleus of Operative Facts ....18

3. Plaintiffs' Claims are Typical of Those of the Class. ....19

4. The Wolphs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class ....21

D. The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ....21

1. Common Questions Predominate Over Any Individualized Inquiries ....22

2. A Class Action is a Superior Method of Resolution. ....23

IV. CONCLUSION ....24

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 16, 22

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......... 18

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .......... 18

*Chavez Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) .......... 15

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) .......... 15

*Clothesrigger, Inc. v. GTE Corp.*,
191 Cal. App. 3d 605 (1987) .......... 15

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*,
445 U.S. 326 (1980) .......... 16

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010) *(en banc)* .......... 17, 18

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......... 16

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) .......... 16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... *passim*

*Hanon v. Dataproducts Corp*,
976 F.2d 497 (9th Cir. 1992) .......... 19

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
527 F. Supp. 2d 1053 (N.D. Cal. 2007) .......... 19

*Keilholtz v. Lennox Hearth Products Inc.*,
268 F.R.D. 330 (N.D. Cal. 2010) .......... 15

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

*Lukovsky v. City and County of San Francisco*,
No. C05-00389 (WHA), 2006 WL 140574 (N.D. Cal. Jan. 17, 2006) .................................. 18

*Masters v. DirecTV, Inc.*,
No. 08-55825 & 08-55830 (FMC), 2009 WL 4885132 (9th Cir. Nov. 19, 2009) .................. 15

*Mazza v. American Honda Motor Co.*,
254 F.R.D. 610 (C.D. Cal. 2008) ..................................................................................... 15

*Parkinson v. Hyundai Motor America*,
258 F.R.D. 580 (C.D. Cal. 2008) ..................................................................................... 15

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ......................................................................................... 15, 16

*Quintero v. Mulberry Thai Silks, Inc.*,
No. 08-c-02294 (MHP), 2008 WL 4666395 (N.D. Cal. Oct. 22, 2008) ................................ 17

*Scott v. Snelling & Snelling, Inc.*,
732 F. Supp. 1034 (N.D. Cal. 1990) ................................................................................ 14

*Van Slyke v. Capital One Bank*,
503 F. Supp. 2d 1353 (N.D. Cal. 2007) ........................................................................... 14

*Wolin v. Jaguar Land Rover North America LLC*,
617 F.3d 1168 (9th Cir. 2010)................................................................................ *passim*

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) .................... 17, 22

RULES

Federal Rule of Civil Procedure 23.............................................................................. *passim*

TREATISES

71 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE Civil 2D § 1764 (2005) ....................................................................... 19

71 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE Civil 2D § 1779 (2005) ....................................................................... 23

1 Newberg & Conte, *Newberg on Class Actions*, § 3.3 (4th ed. 2002)........................................ 17

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971) ................................................... 14

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

## I. SUMMARY OF ARGUMENT

Plaintiffs Lora and Clay Wolph (collectively "Plaintiffs") are among the over one million consumers in the United States who purchased a notebook computer from Acer America Corporation ("Acer"), that came bundled and pre-installed with Microsoft's Windows Vista Home Premium or Vista Business operating system ("OS") (collectively referred to herein as "Vista Premium") and that contained 1 gigabyte ("GB") of Random Access Memory ("RAM") or less as shared memory for both the system and graphics ("Acer Notebooks" or "Defective Notebooks"). Plaintiffs' allege in their First Amended Complaint ("FAC") that the Acer Notebooks suffer from a multitude of systemic problems, including locking up, freezing, and slow load times, as a direct result of the fact that Acer does not equip these systems with sufficient materials (*i.e.*, system memory) to adequately run the Vista Premium operating system. As a result, Plaintiffs contend that Acer has breached both its express warranty and the Magnuson Moss Warranty Act for failing to remedy these defects. Plaintiffs further allege that the defects with the Acer Notebooks contradict Acer's representations and advertisements touting the ability of the Defective Notebooks to effectively and adequately operate Vista Premium.

This lawsuit is appropriate for class adjudication because the inability of the Defective Notebooks to adequately operate Vista Premium can be tested, examined, adjudicated, and remedied on a class-wide basis. Plaintiffs' experts have conducted detailed evaluations on computers within the class and have reached similar conclusions: the computers fail to function adequately and instead are unreasonably slow, lock-up, and freeze as a result of insufficient memory. The conclusions of Plaintiffs' experts have also been confirmed by independent industry technicians and other computer manufacturers, [redacted] Additionally, Acer has presented universal class-wide misrepresentations and omissions regarding the ability of the Defective Notebooks to operate Vista Premium that are appropriate for class-wide adjudication and do not vary between models or Class members. Accordingly, Plaintiffs respectfully request that the Court certify this case as a class action and appoint Class Counsel.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

## II. NATURE OF THE CASE

### A. The Wolphs' Problems With Their Acer Notebook

In the Spring of 2008, Lora Wolph sought to purchase a new notebook computer. On April 20, 2008, Lora and her husband purchased an Acer Aspire 4520-5458 Notebook for $586.36 from Walmart.[1] [REDACTED] This notebook contained 1 GB of RAM, shared between graphics and system memory, and Acer bundled and sold it with a Vista Premium operating system.[3]

Soon after this purchase, Mrs. Wolph discovered that her computer would not run properly and exhibited numerous problems, including freezing, locking up, and operating very slowly. After being unable to return the system to Walmart, in September 2008, Mrs. Wolph contacted Acer Technical Support via email to discuss the problems with her Acer Notebook and seek a refund. Lora Wolph's email to Acer read in relevant part as follows:

> Customer (Lora Wolph) - 09/05/2008 09:04 AM - This computer was sold with less than 1GB which means it cannot possibly run the Vista program that it came with. I have had trouble with it since I got it and did not know what was wrong. I finally had a tech person explain that it should not have been sold with less than 1GB--it cannot run Vista with less. It is not my fault that Vista came with this computer than [sic] cannot run the program.[4]

Acer denied the Wolphs' request to have their computer repaired. One of Acer's customer service representatives ("Hal") responded via e-mail on September 5, 2008 as follows:

> [I]f the system does not run properly, please note that Windows Vista recommended requirements for the memory is 1 GB of system memory. However, the minimum requirements is [sic] 512 MB of memory in which your system is pre-installed with. This

---

[1] *See* Declaration of Lora Wolph ISO Pltfs.' Mot. for Class Cert. ("Lora Decl.") ¶ 2; Declaration of Clay Wolph ISO Pltfs.' Mot. for Class Cert. ("Clay Decl.") ¶ 2.
[2] [REDACTED] attached as Ex. 1 to the Declaration of James Pizzirusso ISO Pltfs.' Mot. for Class Cert. ("Pizzirusso Decl. Ex.").
[3] *See* FAC ¶ 7-8, 61.
[4] *Id.* ¶ 13.

> means that the system is still able to run Windows Vista properly.[5]

As detailed below, the above statement was incorrect. In November 2008, after Acer rejected Plaintiffs' attempts to seek a refund or repair under the warranty, Plaintiffs paid $157.40 to repair their computer and add additional RAM so that the notebook would run adequately as designed, marketed, advertised, promoted, and warranted by Acer.[6] Justin Brickner, the Hardware Department Manager from Noguska LLC (a computer repair center) that installed the additional memory, advised the Wolphs as follows:

> The specifications of the computer from the factory show that it was shipped with 1GB DDR-2 of system memory. As a technician/engineer I felt this was inadequate system memory for a computer operating Windows Vista. Especially since the video memory is shared with the system memory, leaving a useable 768MB of system memory. *Since the system memory was low, performance of windows was significantly decreased. This is because Microsoft specifies Windows Vista needs at least 1GB of full system memory to operate properly. The solution to this issue was to add 2GB more of system memory to make the computer fully functional.*[7]

After this repair, the Wolphs' problems with the computer subsided.[8] They brought this action to pursue refund, repair, or replacement costs on behalf of similarly situated notebook purchasers.

Testing and analysis performed by Plaintiffs' experts on the Wolphs' notebook computer confirmed that the computer suffered from serious problems, including slow load times, lock-ups, and freezing, and that it could not engage in basic computer functions when analyzed utilizing "out of the box" conditions.[9] Plaintiffs' experts further confirmed that these defects in the Wolphs' notebook computer were caused by inadequate memory to run the memory intensive operating system Vista Premium -- not any software the Wolphs put on their computer -- and that

---

[5] *Id.* ¶ 14.
[6] *Id.* ¶ 15.
[7] *Id.* ¶ 16 (emphasis added); *see also* Exhibit B to FAC.
[8] *See* Lora Decl. ¶ 7.
[9] *E.g., See* Declaration of Ronald Alepin ("Alepin Decl.") ¶¶ 63-60 (Pizzirusso Decl. Ex. 22); Declaration of Todd Stefan ("Stefan Decl.") ¶¶ 12-16 (Pizzirusso Decl. Ex. 23).

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

these problems were eliminated or greatly reduced with additional memory.[10]

**B. Acer's Defective Notebooks Are Marketed and Sold With Insufficient Memory to Operate Vista Premium**

As detailed in Ronald Alepin's expert report, Microsoft introduced the Vista operating system to the market in January 2007. Microsoft developed Windows Vista in four editions: Windows Vista Home Basic, Windows Vista Home Premium, Windows Vista Business, and Windows Vista Ultimate. Windows Vista Home Basic ("Vista Basic") is intended for budget users with low needs and has less features than the other systems; therefore, Vista Basic requires less system memory. Windows Vista Home Premium and Windows Vista Business (collectively referred to herein as "Vista Premium") contain additional, memory-intensive features -- such as Aero graphics and Media Center -- that distinguish them from Vista Basic and require the dedication of additional RAM in order for the operating systems to run adequately.[11]

The notebooks at issue in this case have "shared system memory" rather than discrete system memory. This means that the system memory is utilized by both the operating system and the graphics system of the computer (this is also referred to as Unified Memory Architecture -- or UMA). This design is used with many integrated graphics solutions to reduce the cost and complexity of the motherboard design, as no additional memory chips are required on the board. A side effect of this design is that when some RAM is allocated for graphics, it becomes effectively unavailable for anything else. Thus, notebooks with integrated graphics can suffer from performance issues for two very important reasons: 1) having the graphics subsystem and CPU contend for memory access slows overall performance of the system; and 2) removing memory from the total amount available for the OS substantially slows performance of the OS in cases where available memory is already limited.[12]

Despite the fact that numerous computer professionals, other computer manufacturers, and even Microsoft recommend more than 1 GB of RAM in any computer seeking to run the Vista

---

[10] *E.g.*, Alepin Decl. at ¶ 68; Stefan Decl. ¶ 15.
[11] Alepin Decl. ¶¶ 7-8; 18-21.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Premium operating system (often at least 2 GB RAM or systems with discrete graphics cards of at least 128 MB RAM), Acer routinely designed, marketed, promoted, advertised, warranted, and sold notebook computers bundled with Vista Premium operating systems with only 1 GB of RAM of shared system memory that fail to leave sufficient memory to adequately run Vista Premium.[13]

Acer's warranty provides that "Acer warrants the Product you have purchased from Acer or from an Acer Authorized Reseller in the United States or Canada to be free from defects in materials or workmanship under normal use during the warranty period."[14] [redacted] Given the insufficient memory in the class models, Plaintiffs contend that the Acer computers at issue would not have performed according to the standards or the specifications for which they were designed and that these claims can be tried and proven on a class-wide basis.

**1. <u>Plaintiffs' Experts Confirm That the Defective Nature of the Acer Notebooks Can be Established and Adjudicated on a Class-Wide Basis</u>**

As set forth in this motion and the accompanying declarations of Plaintiffs' experts, Ronald Alepin and Todd Stefan, the defective nature of the Acer Notebooks can be adjudicated on a class-wide basis by examining the ability of the Defective Notebooks to operate Vista Premium with 1 GB of RAM of shared system memory.[16] Specifically, these experts have performed extensive analyses (including real-world simulations and various benchmark testing) on the Plaintiffs' computer (and, in the case of Mr. Alepin, another similar model in the class) in order to determine whether the class notebooks could effectively operate Vista Premium when equipped

---

12 Alepin Decl. ¶¶ 11; 13-14.

13 FAC ¶ 59. [redacted] x. 2 to the Pizzirusso Decl.

FAC ¶ 11; *see also* Exhibit A to FAC.

15 [redacted] (Pizzirusso Decl. Ex. 3).

16 Plaintiffs requested that Acer provide them with a representative sample of each of the computer models at issue, but Acer contended that no models existed. *See* Def's. Resp. to Pltfs.' 3rd Req. for Prod. of Docs., No. 29 (Pizzirusso Decl. Ex. 4). Plaintiffs' experts are prepared to test and evaluate other models in the class if they are produced.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

with only 1 GB of shared system memory.

**(a) Ronald Alepin**

Ronald Alepin has worked in the computer industry since 1971, designing and developing system software and hardware as well as managing software and hardware companies.[17] Mr. Alepin was asked to address three issues in this case: (1) Do the notebook systems at issue in this case possess sufficient memory to adequately run the Vista Premium OS; (2) Are the complaints and inquiries that Acer received from consumers running Vista Premium notebooks and from retailers selling these products indicative of problems associated with insufficient memory; and (3) whether the cost of repairing or remedying any defective laptops can be established on a common basis -- *i.e.*, whether a single remedy universally applied can resolve the issues for all purchasers.[18] Mr. Alepin's conclusions are summarized as follows:

• Microsoft recommended at least 1GB of system memory in order for users to experience the "basic functionality" of the Vista Home Premium Operating System. To run Aero, the visual identity of Windows Vista Premium, Microsoft required a minimum of 128 MB of graphics memory.

• While OEMs such as Acer could comply, as a technical matter, with Microsoft's minimum individual "Windows Logo Requirements," (which allow systems with 1 GB of total memory, shared between the system and graphics, to license and install Vista Premium), in those "Logo Requirements" and elsewhere, Microsoft strongly recommends 1 GB or more of system memory.

• Many PC professionals and other OEMs, such as Dell, recommend 2 GB or more of system memory on computers running Vista Premium.

• Acer's notebooks containing 1 GB of shared memory between the CPU and graphics processor, like that of the Plaintiffs in this case, failed to meet minimum levels necessary to ensure an appropriate customer experience and would not be expected to function properly or adequately under normal usage.

• None of the problems that the Plaintiffs experienced can be attributed to any software that Plaintiffs installed on their computer or other problems peculiar to their computer, such as a defect in manufacturing or customer abuse. The Plaintiffs' computer did not differ from similar Acer computers sold in the market.

---

[17] Alepin Decl. ¶ 1.
[18] *Id.* at ¶ 4.

• All class members who attempted to use the Vista Premium operating system's features the way an ordinary user would be expected to use these features on Acer's notebooks with 1 GB of RAM and shared memory would be similarly affected.

• The replacement of the 512 MB memory modules with a 2 GB memory module restores the systems to reasonable performance and eliminates most of the problems associated with insufficient memory (e.g., slowness and lock-ups).

• A single remedy, the purchase and installation of additional memory, can resolve the issues for all purchasers of Acer notebooks marketed and sold with Vista Premium and 1 GB of shared memory. The cost to remedy these computers can be established on a common basis.[19]

///

///

///

///

///

///

///

///

///

///

///

///

[19] *Id.* at ¶ 6.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**(b) Todd Stefan**

Todd Stefan is the Vice President of Setec Security Technologies, Inc. His job responsibilities entail providing litigation support to attorneys and project management of Setec's computer forensic and electronic discovery specialists who work in the business unit, Setec Investigations. Setec Investigations ("Setec") specializes in the discovery, collection, investigation, and production of electronic information for investigating and handling computer-related crimes and misuse. In his role with Setec, Mr. Stefan works with government entities, local, state, and federal law enforcement agencies, private attorneys, and corporations, and specializes specifically in managing computer forensic investigations and providing thorough litigation support solutions.[20]

Mr. Stefan performed a forensic analysis of the Wolph's computer and acquired the hard drive contained within the Acer computer system in question, which entailed creating a bit-stream copy (a sector-by-sector/bit-by-bit copy of the hard drive).[21] Mr. Stefan also evaluated and tested the Acer computer -- with 1 GB of shared memory as shipped, and also with 2.5 GB of memory as it existed after repaired by the Wolphs. Mr. Stefan concludes that the original, as-shipped laptop required an extended period of time to boot up, the execution of software programs would hang, crash, or refuse to load, and multiple applications could not be open and in use at the same time without the speed and responsiveness of the computer degrading to an unusable level. He also concludes that, overall, the poor performance, slow speed, and inability to engage in functionality of Windows Vista prevented the Wolphs' laptop from being fully utilized. Mr. Stefan saw significant improvement when additional memory was added.[22]

In sum, Plaintiffs' experts' examination of the Defective Notebooks revealed that they suffered from a number of significant problems, including freezing, lock-ups, and slow load times, when equipped with 1 GB of RAM or less of shared system memory. Furthermore, Plaintiffs'

---

[20] Stefan Decl. ¶ 3.
[21] *Id.* at ¶¶ 7-8.
[22] *Id.* at ¶¶ 12-18.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

experts found that these defects arising from the insufficient system memory occurred when the Defective Notebooks were tested in "out of the box" conditions–*i.e.* with no additional software or hardware installed. In other words, the Defective Notebooks equipped with 1 GB of RAM or less of shared system memory will suffer the problems alleged by Plaintiffs ***regardless of other variables***, such as the programs installed by Class members, the amount of hard drive memory, or the other configurations on the computers. Importantly, these problems were effectively remedied when Plaintiffs' experts tested the Defective Notebooks with additional system memory.

The findings of Plaintiffs' experts are significant in two respects. First, Plaintiffs' experts have confirmed the allegations that the Defective Notebooks suffer from serious performance problems as a result of being equipped with 1 GB of shared system memory. Second, and most important for the purposes of this motion, Plaintiffs' experts have confirmed that this defect can be adjudicated and established on a class-wide basis without regard to any alleged variances in computer configurations or the manner in which the computers were utilized by individual class members.

**2. Common Evidence Supports Plaintiffs' Experts' Conclusions that 1 GB of Shared Memory is Insufficient to Run Vista Premium.**

In addition to the conclusions of Plaintiffs' experts and the independent computer technicians at Noguska LLC, numerous other sources of generalized evidence, including from Acer's own internal files, provide support for the assertion that Acer's notebooks were defective and contained insufficient memory to adequately run the Vista Premium OS.

Soon after Vista was released, industry experts began to publish the results of tests reporting on the performance on Vista-equipped computer systems. PCstats.com ran memory testing on computers containing Vista and confirmed that 2 GB of RAM plus a 256 MB video card were required for optimal performance.[23] A *ComputerWorld* article also interviewed several industry professionals who recommended 2 GB of RAM or more when operating Vista.[24] One of

[23] *Microsoft Windows Vista: How much memory is enough?*, PCstats.com (Pizzirusso Decl. Ex. 5).

[24] Patrick Thibodeau, *Buying a new PC? 'Windows Vista Capable' barely hits the mark: IBM'er says Vista's RAM sweet spot is 4GB*, COMPUTERWORLD, http://www.computerworld.com (Feb. (footnote continued)

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

the world's leading notebook manufacturers, Dell -- both on its website and in public announcements -- urged consumers to purchase systems with 2 GB of RAM (plus discrete graphics cards) when running the Vista OS. [25] Dell's internal testing, which it discussed on its website, revealed that on machines running Vista with 1 GB of shared memory (like the class models here), performance was "penalized." [26] Microsoft, the manufacturer of the Vista Premium OS, also "*strongly*" recommended 1 GB *or more* of system memory on computers running Vista Premium.[27] Acer seemingly ignored these recommendations.

20, 2007) (Pizzirusso Decl. Ex. 6).

[25] *Vista system may need more memory, Dell CEO says*, BLOOMBERG, <http://www.seattlepi.com/business/290154_msftvista27.html> (Oct. 27, 2006) (Pizzirusso Decl. Ex. 7).

[26] *Dell's FAQs for Microsoft Windows Vista: Hardware Requirements and Driver Availability*, <http://www.dell.com/content/topics/global.aspx/solutions/en/winvista_faqs_rel> (Pizzirusso Decl. Ex. 8).

[27] Portions of Windows Logo Program 3.0: Windows Vista Logo Program Client System Re .09) (December 22, 2006) (Pizzirusso Decl. Ex. 9)

[28]

[29]

[30]

[31]

[32]

(footnote continued)

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403



PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

(Pizzirusso Decl. Ex. 11).

(Pizzirusso Decl. Ex. 12)

35

36

(Pizzirusso Decl. Ex. 12)

(Pizzirusso Decl. Ex.

(footnote continued)

13).

[38] (Pizzirusso Decl. Ex. 13).

[39] (Pizzirusso Decl. Ex. 4).

[40]

[41] (Pizzirusso Decl. Ex. 15).

[43]

[44] (Pizzirusso Decl. Ex. 16).

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

[redacted]

This evidence is generalized and common to the class.

### C. Defendants Have Made Uniform Misrepresentations Regarding the Ability of the Defective Notebooks to Operate Vista Premium

Acer has also made uniform misrepresentations and omissions regarding the ability of the Defective Notebooks to operate Vista Premium that can be adjudicated on a class-wide basis. Specifically, on every Defective Notebook at issue, Acer placed a label on the outside of the box detailing the computer's system specifications and touting the fact that the computer was bundled with Vista Premium.[47] [redacted] Acer's product labels [redacted] explicitly and implicitly represented that the Defective Notebooks had adequate memory to run the Windows Vista Premium operating system with they were bundled. By virtue of including Vista Premium pre-installed on every notebook computer at issue, Acer also impliedly represented that the computers could adequately run the software and the features contained thereon. Furthermore, Acer touted Windows Vista Premium on its website (in several places) to consumers with messages that read: "Acer recommends Windows Vista® Business for Business Computing. Acer recommends Windows Vista® Home Premium for Personal Computing."[49] Acer also uniformly failed to disclose that its products did not meet Microsoft's "recommended requirements" and would fail to function adequately. These representations were uniformly available to Plaintiffs and every Class member who purchased a Defective Notebook.

## III. CLASS CERTIFICATION IS APPROPRIATE

Plaintiffs bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and the following Class of similarly situated consumers:

---

45 [redacted]
46
47 *See, e.g.*, Exhibit D to FAC.
48 [redacted] (Pizzirusso Decl. Ex. 17).

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

All persons and entities who reside in the United States who have purchased a new Acer notebook computer from Acer or an Acer Authorized Reseller, not for resale, that came pre-installed with a Microsoft® Windows Vista Home Premium, Business, or Ultimate operating system, and contained 1GB of Random Access Memory or less as shared memory for both the system and graphics.

The following individuals and entities shall be excluded from the Class: (1) Acer and its subsidiaries, affiliates, officers, and employees; (2) government entities; and (3) the judge(s) to whom this case is assigned and any immediate family members thereof.

**A. <u>Choice of Law Principles Require Application of California Law to Plaintiffs' Claims.</u>**

Plaintiffs filed their claims under California law and assert that California law should apply to the claims in this action. With respect to Plaintiffs' warranty claims, the parties' contractual relationship is governed by the choice of law provision found in all of Acer's warranties, which provides in pertinent part that, "All product warranties and warranty options ***shall be governed exclusively by the laws of the State of California*** exclusive of its choice of law provisions."[50] Pursuant to the principles of contractual interpretation, this clause requires that California law be applied to the warranty claims of all Class Members. *E.g., Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1039 (N.D. Cal. 1990) (finding that unless it violates California public policy, "a provision in a contract dictating the law by which the contract should be interpreted is given deference"); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971). Here, this choice of law provision supports California public policy in contrast to those cases where courts in this district have struck down choice of law provisions dictating the application of other states' laws in order to apply California law. *See, e.g., Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1360 (N.D. Cal. 2007). Acer has not disputed that California law applies to Plaintiffs' claims and, in fact, relied exclusively on California law in its Motion to Dismiss.

Under applicable choice of law principles, California law should also apply to the remainder of Plaintiffs' claims. To apply California law to claims by a class of non-residents,

---

[49] *See, e.g.*, FAC Ex. E.
[50] *See* Acer Limited Product Warranty, FAC Ex. A.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

there must be a "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum state's] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985). "When considering fairness in this context, an important element is the expectation of the parties." *Id.* at 822.

Defendant Acer is incorporated under the laws of the State of California and has its principal place of business and headquarters in San Jose, California.[51] Each of Acer's acts and omissions concerning its advertisements, misrepresentations, concealments, and warranties originated in, and has a direct nexus to, the State of California, where Acer America's headquarters are located. Additionally, Acer has affirmatively availed itself of the laws of the State of California by *unilaterally* including a California choice of law provision in its warranties at issue, and the parties already have an expectation that California law is going to apply to any related claims. Acer should not be permitted to arbitrarily elect to bind its customers to the warranty laws of California while also avoiding California consumer protection statutes. Accordingly, Acer is subject to suit by non-residents for its violation of California law. *See, e.g., Masters v. DirecTV, Inc.*, No. 08-55825 & 08-55830 (FMC), 2009 WL 4885132, at *1 (9th Cir. Nov. 19, 2009) (unpublished) (holding that in a nation-wide class action, "California has a materially greater interest than Montana or Georgia in the current dispute because California is home to the sole defendant and because the appellees assert claims under California law alone.").[52]

---

[51] FAC ¶ 18.

[52] *See also Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly originated in California. With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants."); *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010) ("Overall, this class action involves a sufficient degree of contact between Defendants' alleged conduct, the claims asserted and California to satisfy due process concerns."); *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 597-98 (C.D. Cal. 2008) (applying California law to nationwide class action); *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 620-21 (C.D. (footnote continued)

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**B. Class Actions Are Important Vehicles to Obtain Small Value Recovery.**

As the United States Supreme Court has observed, "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). This is particularly true with respect to small value consumer cases, such as the case at bar. Indeed, the Supreme Court has also repeatedly recognized that one of the fundamental purposes of Federal Rule of Civil Procedure 23 is to enable aggrieved persons whose individual claims are dwarfed by the costs of litigation to seek judicial redress through the aggregation of claims into a single class action: "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).[53]

**C. Plaintiffs Satisfy the Requirements of Federal Rule of Civil Procedure 23(a)**

In a class action, the party seeking certification must establish that the four prerequisites of Federal Rule of Civil Procedure 23(a) are met. These are: (1) numerosity; (2) the existence of common questions of law or fact; (3) typicality of claims or defenses of the representative parties; and (4) fair and adequate protection of the interests of the class. FED. R. CIV. P. 23(a). The parties

---

Cal. 2008) (same); *Chavez Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007) (same); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 614-15 (1987) (applying California consumer protection statutes to non-California residents because "the alleged fraudulent misrepresentations forming the basis of the claim of every [class member] nationwide emanated from California.").

[53] *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quotation omitted) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); *Shutts*, 472 U.S. at 809 ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available."); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("A critical fact in this litigation is that petitioner's individual stake in the damages award he seeks is only $70. No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit proceed as a class action or not at all.").

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

must also satisfy either Rule 23(b)(2) or 23(b)(3). Rule 23(b)(3) is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED R. CIV. P. 23(b).

As the party seeking certification, Plaintiffs bear the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). Courts should "perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010) *(en banc)*. By probing into the merits, however, a district court is not empowered at the class certification stage, to resolve disputes regarding the merits; rather, a court should inquire into the merits *only* to determine whether the plaintiff has satisfied the requirements of Rule 23. *Id*. at 586-87, 591 (emphasis added).

As discussed in detail below, this Court should grant class certification because Plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(3).

**1. <u>The Class is Numerous and Ascertainable</u>**

The first enumerated requirement under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." FED. R. CIV. P. 23(a)(1). In this case, Defendant's documents demonstrate that Acer sold [redacted] Defective Notebooks within the class period.[54] A class of that size easily satisfies Rule 23(a)(1)'s requirement that the class be so large that joinder of all members is impracticable. *See Quintero v. Mulberry Thai Silks, Inc.*, No. 08-c-02294 (MHP), 2008 WL 4666395, at *3 (N.D. Cal. Oct. 22, 2008) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." (citing 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[1][b] (3d ed.2004)); 1 Newberg & Conte, *Newberg on Class Actions*, § 3.3 (4th ed. 2002) (if "general knowledge and common sense

indicate [the class] is large, the numerosity requirement is satisfied."). Therefore, this class action involves approximately 1 million class members and easily satisfies the numerosity requirement.

Additionally, the class must be ascertainable. *See, e.g., Lukovsky v. City and County of San Francisco*, No. C05-00389 (WHA), 2006 WL 140574, at *2 (N.D. Cal. Jan. 17, 2006) ("Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.") (quotation omitted). Here, the proposed class is readily ascertainable, as it consists of all persons who purchased the Acer Notebooks during the class period. The identity and contact information for a significant portion of these individuals can be obtained from the warranty registration information and customer service databases collected by Acer.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

### 2. <u>The Plaintiffs' Claims Arise From a Common Nucleus of Operative Facts</u>

The second criterion under Rule 23(a) is that questions of law or fact common to the class exist. FED. R. CIV. P. 23(a)(2). Individual factual variations among class members do not defeat underlying commonality; "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also Wolin v. Jaguar Land Rover North America LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). "The commonality test is 'qualitative rather than quantitative'–one significant issue common to the class may be sufficient to warrant certification." *Dukes*, 603 F.3d at 599. In the Ninth Circuit, the requirements of Rule 23(a)(2) are to be construed "permissively." *Id.* (citing *Hanlon*, 150 F.3d at 1019). The mere existence of factual differences between class representatives and the class they seek to represent are insufficient grounds to defeat commonality. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (holding that "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality").

In this case, the common factual and legal questions that form the basis of this lawsuit

---

[54] (Pizzirusso Decl. Ex. 2).

include: (1) Whether Acer's notebooks pre-installed with Vista Premium and only 1GB of RAM shared between the system and graphics are defective; (2) Whether Acer knew or should have known of the defect in these computers; (3) Whether Acer misrepresented or omitted material information about the ability of its Defective Notebooks to effectively and adequately run the Vista Premium OS; and (4) Whether Plaintiffs and the Class have suffered a loss as the result of Acer's acts and omissions.[55] As discussed *supra*, each of Plaintiffs' claims arise from a common set of core facts and Plaintiffs can use generalized evidence at trial to establish their claims. Similar, any defenses Acer may raise are likewise capable of class-wide adjudication.

### 3. Plaintiffs' Claims are Typical of Those of the Class.

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." A plaintiff's claim is typical if it arises from the same event or practice or course of conduct, and his or her claims are based on the same legal theory as the other Class members. The typicality requirement is liberally construed and does not require that the claims be substantially identical. *See Hanlon*, 150 F.3d at 1020 ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.").[56] The test is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp*, 976 F.2d 497, 508 (9th Cir. 1992).

In this case, Plaintiffs' experiences are emblematic and typical of the other Class members. Plaintiffs purchased an Acer computer with insufficient memory to run Vista Premium and suffered from slow operations, lock-ups, and freezing. These claims are typical of those in the

---

[55] *See* FAC ¶ 115.

[56] *See also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1063 (N.D. Cal. 2007) ("[T]he named plaintiff need not have suffered an identical wrong. Rather, the claims of the putative class must be 'fairly encompassed by the named plaintiff's claims.'" (citation omitted); 71 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2D § 1764, at 235-41 (2005) (typicality requirement is met "even though varying fact patterns support the claims or defenses of individual class members or there is a (footnote continued)

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

class as evidenced by [REDACTED]

Acer may attempt to defeat typicality by claiming that the Wolphs' computing problems arose as a result of Lora Wolph's use and installation of a commercial software program called "EMI." This argument is unavailing. Testing performed on the Wolphs' notebook computer by Plaintiffs' experts confirmed that it suffered from problems, including slow load times, freezing, and lock-ups, and could not engage in basic computer functions when tested utilizing "out of the box" conditions ***prior to*** installation of any software or programs.[58] Plaintiffs' experts further confirmed that the problems associated with the operation of the Wolphs' notebook computer were remedied with the additional system memory installed by Noguska LLC. Thus, the problems the Wolphs experienced were unrelated to any software they installed on their computer.[59]

The Ninth Circuit recently addressed a similar argument in a case where plaintiffs asserted that defective alignment caused tire wear on Land Rover vehicles. *See Wolin*, 617 F.3d at 1175.. The defendants argued that the plaintiffs' claims were not "typical" because the plaintiffs' tire wear was not of the type attributable to the alleged defect and likely caused by another source. In rejecting the defendants' arguments, the Ninth Circuit held: "Whether they experienced premature tire wear at six months, nine months, or later goes to the extent of their damages and not whether named appellants 'possess the same interest and suffer[ed] the same injury as the class members.' *Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect*." *Id.* (quotations omitted) (emphasis added).

Therefore, the Wolphs' experience in purchasing their notebook and the problems they have suffered with it make their claims typical of the putative Class Members. Factual differences

---

disparity on the damages by the representative parties and other members of the class.").

57 [REDACTED]

58 *See* Alepin Decl. ¶ 60-69; Stefan Decl. ¶ 12-18.

59 While the manufacturer later suggested that a computer should have 2 GB of RAM when using certain versions of the EMI software, at the time of Lora Wolph's purchase, 1 GB was all that was recommended. *See* Deposition of Lora Wolph, at 42:22-43:5 (April 7, 2010) (Pizzirusso Decl. Ex. 18); Declaration of Grant Girard (September 13, 2010) (Pizzirusso Decl. Ex. 19); EMI System (footnote continued)

in the scope of problems reported, or the specific software on class members' computers, will not defeat typicality given the similar issues surrounding all class models.

**4. The Wolphs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class**

The final criterion of Rule 23(a) is that the representative parties fairly and adequately represent the class. FED. R. CIV. P. 23(a)(4). Two questions are considered when determining the adequacy of representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, the adequacy of representation requirement of Rule 23(a) is clearly satisfied.

The Wolphs have no conflict of interest with the other Class members. They will adequately represent the Class members in seeking relief from Acer.[60] Plaintiffs have demonstrated their commitment to prosecuting this case on behalf of the class by reviewing and commenting upon the pleadings, responding to requests for written discovery, appearing for depositions, and participating in all aspects of the case. They are prepared to pursue this case to conclusion in the interests of the Class and have a thorough understanding of the case and their fiduciary duties to the Class.[61]

Furthermore, the Wolphs have retained and are represented by counsel who are highly experienced in federal consumer protection class action litigation.[62] The Wolphs' attorneys possess, and are committed to expending, the skill, time, and resources needed to pursue this case to resolution. Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

**D. The Proposed Class Satisfies the Requirements of Rule 23(b)(3)**

Under Rule 23(b)(3), a plaintiff seeking certification bears the burden of proving two

---

Requirements (Pizzirusso Decl. Ex. 20).

[60] Lora Decl. ¶¶ 10-13; Clay Decl. ¶¶ 8-11

[61] Pizzirusso Decl. ¶ 5.

[62] *See generally*, Pizzirusso Decl.; Declaration of Daniel Warshaw ISO Pltfs.' Mot. for Class Cert.; (footnote continued)

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

conditions: (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Zinser*, 253 F.3d at 1188-89 (citing *Hanlon*, 976 F.2d at 508).

**1. Common Questions Predominate Over Any Individualized Inquiries.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted). Here, the common issues Plaintiffs have identified predominate over any perceived individualized issues that Acer may attempt to identify.

For example, Acer may seek to argue that not all consumers have experienced the exact same manifestations of the defect or had varying experiences with their Notebooks, thus precluding a finding of predominance. The Ninth Circuit's recent decision in *Wolin* is also instructive on this point and rejects such arguments. In *Wolin*, the defendants argued that common issues did not predominate because the class members' vehicles did "not suffer from a common defect, but rather, from tire wear due to individual factors such as driving habits and weather." 617 F.3d at 1173. In rejecting that argument, the Court held that "*proof of the manifestation of a defect is not a prerequisite to class certification*. What [defendant] argues is whether class members can win on the merits. *For appellants' claims regarding the existence of the defect and the defendant's alleged violation of consumer protection laws, this inquiry does not overlap with the predominance test*." *Id.* (emphasis added) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975) ("[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the

---

Declaration of Jori Naegele ISO Pltfs.' Mot. for Class Cert.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Rule.")).

Further, as plaintiffs have asserted here, the *Wolin* court held that the plaintiffs there could prove their defect and false advertising claims using common evidence: "*All of these allegations are susceptible to proof by generalized evidence.* Although individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect." *Id.* (emphasis added). The *Wolin* court also held that plaintiffs' breach of written warranty claims could be tried with common proof:

> All of the proposed class members here are covered by a Limited Warranty that provides for the repair or replacement of defects, and all of the proposed class members allege that their vehicles suffer from the same defect. These claims require common proof of the existence of the defect and a determination of whether [defendant] violated the terms of its Limited Warranty. Accordingly, we conclude that common issues predominate regarding Land Rover's obligations under its Limited Warranty.

*Id.* at 1174.

Plaintiffs will use common, predominating evidence to show that the defect here was a lack of memory in the computers and that Acer made uniform misrepresentations and omissions regarding the ability of their Defective Notebooks to adequately operate Vista Premium. Under *Wolin* and other applicable precedent, common issues predominate with respect to Plaintiffs' claims and they can be tried with generalized evidence.

**2. <u>A Class Action is a Superior Method of Resolution.</u>**

The superiority element requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Generally, the factors relevant to assessing superiority include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3)(A-D). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." FEDERAL PRACTICE AND PROCEDURE, § 1779 at

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

174 (2005). As the *Wolin* court held, a superiority analysis is focused on efficiency and fairness:

> Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification. Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair. This analysis is related to the commonality test. Underlying both tests is a concern for judicial economy.

*Wolin*, 617 F.3d 1175-76 (citing *Zinser*, 253 F.3d at 1189; *Hanlon*, 150 F.3d at 1023).

The superiority element is particularly satisfied when the claims of Class members are too small to warrant or motivate plaintiffs to bring their claims on an individual basis in order to be compensated for their loss. The average cost of the additional memory required to remedy the computers at issue here is approximately $30 and installation charges range from $50-$150.[63] Alternatively, refund/replacement costs would be in the $500-$600 range.[64] Plaintiffs are not aware of any individual litigation against Acer over these issues given such nominal amounts. This case involves claims of over one million Class members who have purchased Defective Notebooks with damages of, at most, several hundred dollars a piece. The number of individual claims is too numerous to manage these cases as individual actions. Furthermore, due to the small amount of damages suffered by individual class members, it is unfeasible and impracticable for the Class members to institute an individual claim for relief. Therefore, as in *Wolin*, a Class action of Plaintiffs' defect and false advertising claims here is superior to other alternatives because common issues can be tried together and "[i]t is far more efficient to litigate [these issues] on a classwide basis rather than in thousands of individual and overlapping lawsuits . . . . that could involve duplicating discovery and costs that exceed the extent of proposed class members' individual injuries." *Wolin*, 617 F.3d 1176.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion

---

[63] Alepin Decl. ¶¶ 94-100. The Plaintiffs' repair charge was $157.40. FAC ¶ 15.
[64] *See, e.g.*, FAC ¶ 6.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

to certify a nation-wide class in this litigation, appoint Plaintiffs as representatives of the proposed Class, and appoint Plaintiffs' attorneys as Class Counsel.

DATED: November 22, 2010

/S/

Daniel L. Warshaw (Bar No. 185365)
dwarshaw@pswplaw.com
Bobby Pouya (Bar No. 245527)
bpouya@pswplaw.com
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788 8300
Facsimile: (818) 788 8104

James J. Pizzirusso (admitted pro hac vice)
jpizzirusso@hausfeldllp.com
Melinda Coolidge (admitted pro hac vice)
mcollidge@hausfeldllp.com
**HAUSFELD, LLP**
1700 K Street NW
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

Michael P. Lehmann (Bar No. 77152)
mlehmann@hausfeldllp.com
**HAUSFELD, LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 693-0770

Jori Bloom Naegele (admitted pro hac vice)
jbnaegele@gmail.com
Robert D. Gary (admitted pro hac vice)
rdgary@gmail.com
**GARY, NAEGELE & THEADO, LLC**
446 Broadway Avenue
Lorain, OH 44052
Telephone: (440) 244-4809
Facsimile: (440) 244-3462

Attorneys for Plaintiffs and the Proposed Class