DANIEL L. WARSHAW (Bar No. 185365)
dwarshaw@pswplaw.com
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

JAMES J. PIZZIRUSSO (admitted pro hac vice)
jpizzirusso@hausfeldllp.com
**HAUSFELD, LLP**
1700 K Street NW
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201

*[Additional Plaintiffs Counsel Listed on Signature Page]*
Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| LORA AND CLAY WOLPH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ACER AMERICA CORPORATION, a California corporation,<br><br>Defendant. | CASE NO. CV-09-01314 JSW<br><br>(Assigned to the Honorable Jeffrey S. White)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>[Complaint Filed: March 25, 2009]<br><br>Date:      March 25, 2011<br>Time:     9:00 a.m.<br>Crtrm.:   11 |

*(Left margin, vertical text):* PEARSON, SIMON, WARSHAW & PENNY, LLP / 15165 VENTURA BOULEVARD, SUITE 400 / SHERMAN OAKS, CALIFORNIA 91403

## TABLE OF CONTENTS

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**Page**

I.      SUMMARY OF ARGUMENT ........................................... 1

II.     THE APPLICATION OF CALIFORNIA LAW IS PROPER ................................. 2

        A.      The Choice of Law Agreement Between the Parties Requires the Application
                of California Law to the Claims of the Class ............................................. 2

        B.      Application of California Law to This Nationwide Class Action Is Proper
                Under Due Process and Choice of Law Principles ....................................... 3

                1.      This Case Satisfies the Due Process Requirements Articulated in
                        *Shutts* Because Acer's Conduct Emanated From the State of
                        California........................................................................................ 3

                2.      Acer Has Failed to Meet Its Burden of Establishing That California
                        Law Should Not Apply ................................................................... 5

III.    PLAINTIFFS HAVE ESTABLISHED THAT COMMON QUESTIONS OF FACT
        AND LAW PREDOMINATE ......................................................................... 6

        A.      Acer's Efforts to Adjudicate the Existence of a Defect Constitutes an
                Improper and Premature Merits Based Inquiry That Cannot Defeat Class
                Certification..................................................................................................... 6

        B.      Acer's Uniform Material Misrepresentations on the Packaging of the Class
                Computers Are Appropriate for Class Adjudication...................................... 8

IV.     DEFENDANT'S MERITS BASED DEFENSES ARE UNCONVINCING AND
        CANNOT DEFEAT CLASS CERTIFICATION ..................................................... 9

        A.      Microsoft's Vista Logo Program Does Not Insulate Acer From Liability................ 10

        B.      The Testimony of Acer's Expert Alan Smith Is Unreliable and Unverifiable.......... 10

        C.      Plaintiffs' Expert Testimony Complies With Industry Benchmarks and Sets
                Forth Reliable Methods for Adjudicating This Case on a Class-wide Basis .......... 11

        D.      Plaintiffs' Factual and Documentary Evidence Also Supports Class
                Certification..................................................................................................... 12

V.      PLAINTIFFS' PROPOSED CLASS IS NARROWLY TAILORED,
        ASCERTAINABLE AND EASILY MANAGEABLE ........................................ 13

A.     Plaintiffs Have Appropriately and Narrowly Defined Their Class to Include
All Purchasers of the Alleged Defective Notebooks ...................................................13

B.     The Possibility That All Class Members Cannot Participate in the Recovery
Does Not Defeat Ascertainability or Class Certification ...........................................14

VI.     PLAINTIFFS ARE TYPICAL AND ADEQUATE CLASS REPRESENTATIVES ...........14

VII.    ACER'S ATTACK ON THE ADEQUACY OF CLASS COUNSEL IS
DESPERATE AND FRIVOLOUS ..................................................................................15

VIII.   A CLASS ACTION IS THE SUPERIOR METHOD FOR ADJUDICATING THIS
CLASS ACTION LAWSUIT ..........................................................................................16

IX.     CONCLUSION ...............................................................................................................16

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Brazil v. Dell Inc.,*
2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) .................................................. 9, 13

*Campion v. Old Republic Home Protection, Inc.*
2011 WL 42759 (S.D. Cal. Jan 6, 2011) ............................................................ 9

*Chavez v. Blue Sky Natural Beverage Co.,*
268 F.R.D. 365 (N.D. Cal. 2010) ..................................................................... 4

*Dukes v. Wal-Mart Stores, Inc.,*
603 F.3d 571 (9th Cir. 2010) .......................................................... 6, 7, 11, 12

*Elliott v. ITT Corp.,*
150 F.R.D. 569 (N.D. Ill. 1992) ......................................................................... 14

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ..................................................................... 1, 15

*In re Static Random Access Memory (SRAM) Antitrust Litigation,*
2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ................................................. 14

*In re Tobacco II Cases*
("*Tobacco II*"), 46 Cal. 4th 298 (2009) ......................................................... 8, 9

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
527 F. Supp. 2d 1053 (N.D. Cal. 2007) ............................................................ 14

*Keilholtz v. Lennox Hearth Products Inc.,*
268 F.R.D. 330 (N.D. Cal. 2010) ..................................................................... 4, 5

*Kwikset Corp. v. Superior Court,*
51 Cal. 4th 310 (2011) .................................................................................... 8, 9

*Mazza v. American Honda Motor Co.,*
254 F.R.D. 610 (N.D. Cal. 2008) .............................................................. 1, 4, 5, 6

*Mediostream, Inc. v. Acer America Corp.,*
No. 2:07-cv-00376-CE (E.D. Tex. Jan. 25, 2008) ............................................. 4

*Norwest Mortgage, Inc. v. Superior Court,*
72 Cal. App. 4th 214 (1999) ............................................................................ 5

*Phillips Petroleum Co. v. Shutts,*
472 U.S. at 797, 821-822 (1985) .................................................................. 3, 4

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Scott v. Snelling & Snelling, Inc.*,
　　732 F. Supp. 1034 (N.D. Cal. 1990) ............................................................ 2

*State Farm Mut. Auto. Ins. Co. v. Davis*,
　　937 F.2d 1415 (9th Cir. 1991) .................................................................... 5

*Sweet v. Pfizer*,
　　232 F.R.D. 360 (C.D. Cal. 2005) .............................................................. 16

*U.S. v. Scholl*
　　166 F.3d 964, 973 (9th Cir. 1999) ............................................................ 11

*Washington Mutual Bank, FA v. Superior Court*,
　　24 Cal. 4th 906 (2001) ...................................................................... 2, 3, 5

*Wershba v. Apple Computer, Inc.*,
　　91 Cal. App. 4th 224 (2001) ............................................................... 4, 5, 6

*Wolin v. Jaguar Land Rover North America LLC*,
　　617 F.3d 1168 (9th Cir. 2010) ........................................................... passim

*Zinser v. Accufix Research Institute, Inc.*,
　　253 F.3d 1180 (9th Cir. 2001) ................................................................ 2, 5

**OTHER AUTHORITIES**

Rule 23 ................................................................................................... 3, 4

Rule 23(a) ................................................................................................... 6

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

## I.   <u>SUMMARY OF ARGUMENT</u>

The applicable law is clear that, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). In this case, Plaintiffs Lora and Clay Wolph ("Plaintiffs") allege that Acer's notebook computers containing 1GB of RAM or less of shared system memory are defective because they are incapable of properly operating the Microsoft Vista Premium operating system with which they were marketed, packaged and sold. Plaintiffs' theory of liability is ideally suited for class adjudication because it presents a common class-wide issue – *i.e.*, the ability of the class notebooks to properly operate Vista Premium – that can be examined and adjudicated on a class-wide basis without regard to individualized inquiries.

In its Opposition to Plaintiffs' Motion for Class Certification, Acer does not argue that Plaintiffs claims cannot be tried on a class-wide basis. Rather, Acer contends that the Court should deny certification because the class computers are not defective. This type of merits based argument sounds of summary judgment and has been explicitly rejected as a basis for denying class certification by the Ninth Circuit. *See Wolin v. Jaguar Land Rover North America LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("[P]roof of the manifestation of a defect is not a prerequisite to class certification. What [defendant] argues is whether class members can win on the merits.") Furthermore, Acer's attempt to adjudicate the existence of the defect fails because it is based on unreliable and unscientific testimony of their expert Alan Jay Smith.

The balance of Acer's opposition to class certification is similarly unavailing. Specifically, Acer's argument that the class is over broad and unascertainable fails because it also requires the Court to improperly adjudicate now whether the class computers are defective. Plaintiffs have satisfied typicality as purchasers of a class notebook because their claims fairly encompass those of the class. *See Wolin,* 617 F.3d at 1175. Finally, Acer's choice of law argument fails because the relevant law holds that the application of California law to a nationwide class action is proper because Acer has inserted a California law applies in its contracts and its conduct emanates from this state. *See Mazza v. American Honda Motor Co.,* 254 F.R.D. 610, 620-21 (N.D. Cal. 2008).

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

II.     **THE APPLICATION OF CALIFORNIA LAW IS PROPER**

Acer spends a considerable portion of its Opposition to Plaintiffs' Motion for Class Certification ("Opposition") arguing that the Court should not apply California law to this nationwide class action because the State of California has "no connection" to the claims of non-California residents.  *See* Acer's Opp. at pp. 5:3-5:5.  Acer's self-serving argument conspicuously omits and ignores the key fact providing a nexus between the State of California and the claims of every class member – *Acer unilaterally inserted a choice of law provision into its contracts with the class directing that **California law** applies to these claims*.  Moreover, Acer fails to address that: (1) Acer is incorporated in the State of California; (2) Acer situated its headquarters in San Jose, California; and (3) Acer made its business decisions regarding the sale, marketing and distribution of the Defective Notebooks from its headquarters in the State of California.  The overwhelming legal authority requires the application of California law under these circumstances.

A.     **The Choice of Law Agreement Between the Parties Requires the Application of California Law to the Claims of the Class**

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law."  *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).  The Supreme Court of California has held that a choice of law provision in a class action arising from a consumer adhesion contract, "will be enforced unless the other side can establish both that the chosen law is contrary to a *fundamental* policy of [the forum state]."  *Washington Mutual Bank, FA v. Superior Court,* 24 Cal. 4th 906, 917 (2001) (italics in original); *see also Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1039 (N.D. Cal. 1990).

In this case, Acer has unilaterally inserted a California choice of law provision in the warranty of each of the class notebooks, which states, "All product warranties and warranty options ***shall be governed exclusively by the laws of the State of California*** exclusive of its choice of law provisions."  *See* First Amended Complaint ("FAC") at Ex. E, Docket No. 59 (emphasis added).  Plaintiffs have asserted in their Motion for Class Certification that this California choice of law provision controls the contractual and business relationship between the parties.  Acer failed to even mention much less address this provision in its Opposition brief and as the drafting party cannot

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  assert any argument that this choice of law provision is unenforceable as contrary to a fundamental

2  public policy.[1]  Therefore, the Court should apply California law to this nationwide class action

3  lawsuit pursuant to the contractual language Acer inserted into the sale of every class computer.

4      **B.  Application of California Law to This Nationwide Class Action Is Proper Under**

5      **Due Process and Choice of Law Principles**

6      Even in the absence of a choice of law agreement, California law may be used on a class-

7  wide basis so long as it comports with Constitutional due process and applicable choice of law

8  principles.  *See Washington Mutual*, 24 Cal. 4th at 921.  In order for the application of California

9  law to comply with due process, "[California] must have a significant contact or significant

10  aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor

11  fundamentally unfair."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. at 797, 821-822 (1985).  Under

12  choice of law principles, "[t]he party arguing the application of foreign law 'must demonstrate that

13  the latter rule of decision will further the interest of the foreign state and therefore that it is an

14  appropriate one for the forum to apply to the case before it.'"  *Washington Mutual*, 24 Cal. 4th at

15  919-20.  Acer has misconstrued legal authority, presented improper standards and analogized this

16  case to divergent authority in an attempt to avoid the application of California law.  These

17  arguments have no merit and must be rejected.

18      **1.  This Case Satisfies the Due Process Requirements Articulated in *Shutts***

19      **Because Acer's Conduct Emanated From the State of California**

20      In *Shutts*, the Supreme Court of the United States set forth the due process requirements for

21  absent class members and defendants in a nationwide class action lawsuit.  The Court held that

22  absent class members are only afforded "minimal procedural due process protection," which is

23  satisfied through the procedural and substantive safeguards such as adequacy of representation, the

24  right of exclusion, and notice of the class under Rule 23.  *See Shutts*, 472 U.S. at 811.  *Shutts*

25  further held that the application of state law satisfies defendant's Constitutional due process rights

26  _____

27  [1] Notably, Acer also moved to dismiss Plaintiffs' claims under California law and has never

28  asserted that another state's laws should apply during the two years prior to its Opposition.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   when the forum state has, "a significant contact or significant aggregation of contacts, creating state

2   interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* 818-20.

3   Moreover, the Court specifically reaffirmed its previous observation "that in many situations a state

4   court may be free to apply one of several choices of law." *Id.* at 823.

5        As Acer recently admitted in the sworn declaration of Ares Yang in support of a motion to

6   transfer venue in *Mediostream, Inc. v. Acer America Corp.,* No. 2:07-cv-00376-CE (E.D. Tex. Jan.

7   25, 2008), it has significant contacts with the State of California arising from the fact that: (1) "Acer

8   America Corporation is a California corporation with most of its operations within California;" (2)

9   Acer's products are "researched, designed, developed and tested within California;" (3) "All

10  decisions regarding, marketing, sales and pricing…occurred predominantly in California;" and (4)

11  "It is also highly likely that any relevant witness from Acer America Corporation would reside in or

12  near California." *See* Yang Decl., ¶¶ 2-6, attach as Exhibit "A" to the Declaration of Daniel L.

13  Warshaw Regarding Plaintiffs' Reply in Support of Class Certification ("Warshaw Reply Decl.").

14  Furthermore, Acer signaled its intent to be bound by California law by unilaterally inserting a

15  California choice of law provision in its contracts. *See* FAC at Ex. E.

16       These *undisputable* facts establish that, "Plaintiffs have shown that a significant portion of

17  Defendant's alleged harmful conduct emanated from California.  Overall, this class action involves

18  a sufficient degree of contact between Acer's alleged conduct, the claims asserted and California to

19  satisfy due process concerns." *Keilholtz v. Lennox Hearth Products Inc*., 268 F.R.D. 330,

20  340 (N.D. Cal. 2010); *see also Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 379

21  (N.D. Cal. 2010); *Mazza*, 254 F.R.D. at 620-21; *Clothesrigger,* 191 Cal. App. 3d at 614-15;

22  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001).

23       Acer cannot disavow itself of its significant contacts with the California.  Furthermore,

24  Acer's argument that the numerous cases cited by Plaintiffs have all "misapplied *Shutts*" by not

25  focusing on the conduct of class members, is easily defeated by the fact that *Shutts* explicitly held

26  the procedural safeguards under Rule 23 adequately protects class members' minimal due process

27  rights.  *See Shutts*, 472 U.S. at 811.  ("Because States place fewer burdens upon absent class

28  plaintiffs than they do upon absent defendants in nonclass suits, the Due Process Clause need not

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   and does not afford the former as much protection from state court jurisdiction as it does the

2   latter.").  Finally, Acer's argument that California consumer protection laws cannot reach out of

3   state class members fails because, "[the UCL] expressly applies to claims by out-of-state class

4   members deceived by representations 'disseminated from' the state of California."  *Wershba*, 91

5   Cal. App. 4th at 243; *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 228 (1999).

6           **2.      Acer Has Failed to Meet Its Burden of Establishing That California Law**

7                     **Should Not Apply**

8           "The party arguing the application of foreign law 'must demonstrate that the latter rule of

9   decision will further the interest of the foreign state and therefore that it is an appropriate one for

10  the forum to apply to the case before it.'"  *Washington Mutual*, 24 Cal. 4th at 919-20; *Zinser*, 253

11  F.3d at 1187.[2]  California courts apply a three step government interest approach in which the

12  foreign law proponent must establish: (1) whether the law of other states is materially different; (2)

13  whether other states have an interest in having their law applied; and (3) if so, which state's interest

14  would be more impaired if its policy were subordinated to the law of another state."  *Id.*

15          As the foreign law proponent, Acer has failed to meet its burden of proof because it has not

16  cited any differences between the warranty laws of California and foreign states.  *See State Farm*

17  *Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1418 n. 2 (9th Cir. 1991) ("Normally, we would not

18  consider an argument unbriefed and made for the first time during oral argument … We would be

19  particularly hesitant to decide complicated questions of choice of law under these circumstances").

20          Furthermore, "although [Acer] has pointed out variations between California law and the

21  relevant law in the other jurisdictions, … [Acer] has not met its burden of showing that the

22  differences between California law and the law of other jurisdictions are material."  *Mazza*, 254

23  F.R.D. at 622; *Keilholtz*, 268 F.R.D. at 341 ("Defendants have not met their burden of showing that

24  _____

25  [2] Defendant misconstrues *Zinser* for the proposition that plaintiff always bears the burden in a
    choice of law analysis.  However, in *Zinser* the plaintiff sought to apply the law of Colorado (i.e.
26  foreign law) in a California court.  *Zinser*, 253 F.3d at 1187.  Accordingly, the Ninth Circuit held
    that, because "Zinser seeks to invoke the law of a jurisdiction other than California, she bears the
27  burden of proof."  *Id.* (citing *Washington Mutual*, 24 Cal. 4th at 919-20).  Here Acer is the foreign
    law proponent and therefore, it bears the burden of proof.
28

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  the differences between California law and that of the other jurisdictions are material.")

2  Furthermore, courts have repeatedly held that when defendant's conduct emanates from California,

3  the interests in applying the law of California states outweigh the interest in applying the law of

4  foreign states. *See Mazza*, 254 F.R.D. at 623 ("California's more favorable laws may properly

5  apply to benefit nonresident plaintiffs when their home states have no identifiable interest in

6  denying such persons full recovery.") (quoting *Clothesrigger*, 191 Cal. App. 3d at 616); *Wershba*,

7  91 Cal. App. 4th at 242 ("Defendant's comparison of the laws of different jurisdictions is not

8  persuasive. In fact California's consumer protection laws are among the strongest in the country.").

9  Therefore, the applicable choice of law principles requires the application of California law to this

10  nationwide class action lawsuit.

11  **III.  PLAINTIFFS HAVE ESTABLISHED THAT COMMON QUESTIONS OF FACT**

12  **AND LAW PREDOMINATE**

13  **A.  Acer's Efforts to Adjudicate the Existence of a Defect Constitutes an Improper**

14  **and Premature Merits Based Inquiry That Cannot Defeat Class Certification**

15  As the Ninth Circuit recently affirmed in *Wolin*, the proper inquiry at the class certification

16  stage is not whether Plaintiffs can succeed on the merits, but "whether proposed classes are

17  sufficiently cohesive to warrant adjudication by representation." *Wolin*, 617 F.3d at 1173 (quoting

18  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997)); *see also Dukes v. Wal-Mart Stores,*

19  *Inc.*, 603 F.3d 571, 606 (9th Cir. 2010) ("although some inquiry into the substance of a case may be

20  necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), *it*

21  *is improper to advance a decision on the merits to the class certification stage.*") (emphasis added).

22  Like this case, *Wolin* was a consumer class action in which plaintiffs alleged that

23  defendant's products contained a class-wide defect. *See Wolin*, 617 F.3d at 1173. In opposing

24  class certification, the defendant in *Wolin*, like Acer, argued that the class should not be certified

25  because plaintiffs could not prove the existence of a defect. *Id*. The Ninth Circuit expressly

26  rejected this merits based argument and held that, "proof of the manifestation of a defect is not a

27  prerequisite to class certification. What [defendant] argues is whether class members can win on

28  the merits." *Id*. Accordingly, the court found that the class should be certified because plaintiffs'

1  claims were "susceptible to proof by generalized evidence.  Although individual factors may affect

2  [class members], they do not affect whether the vehicles were sold with an alignment defect." *Id*.

3       Like the defendant in *Wolin*, Acer contends that the Court should not grant Plaintiffs'

4  Motion for Class Certification because Acer's computers are not "defective."  *See* Acer's Opp. at

5  pp. 10:4-10:13.  This argument requires the Court to adjudicate the merits of the case for the

6  purpose of determining which party will succeed on the merits at trial.  That is not the test at class

7  certification and the controlling authority holds that it cannot serve as a basis for denying class

8  certification.  *See Wolin*, 617 F.3d at 1173; *Dukes*, 603 F.3d at 606.  Plaintiffs need only show that

9  the merits of their claims can be properly adjudicated on a class-wide basis.  *Id*.

10      As such, Acer's merits based arguments are merely an attempt to divert the Court's attention

11 from the fact that Plaintiffs have met their burden of establishing that this case presents common

12 issues which are ideally suited for class adjudication.  Specifically, as set forth in Plaintiffs' Motion

13 for Class Certification, their claims arise from a single, common theory of liability: whether Acer's

14 notebook computers containing 1GB of RAM or less of shared system memory can properly

15 operate Vista Premium.  Contrary to Acer's arguments, Plaintiffs and their experts have established

16 the mechanisms to examine the existence of the alleged defect on a class-wide basis by testing the

17 notebooks in out-of-the-box conditions, which will eliminate individualized variables.  *See* Alepin

18 Decl., ¶¶ 6, 52-69.  These tests are buttressed by the numerous other forms of common and

19 generalized evidence, most of which comes from Acer's own files, including: Acer's benchmarking

20 results, Acer's retailer return rates, Acer's consumer return survey, Acer's customer inquiry

21 databases, and third party recommendations regarding Vista.

22      While Plaintiffs are confident that this analysis will establish the existence of a class-wide

23 defect at trial, the relevant inquiry at the class certification stage is not whether Plaintiffs will

24 prevail but whether Plaintiffs' theory of liability can be proven (or disproven) on a class-wide basis.

25 The answer is invariably "Yes" and Acer's Opposition offers nothing to disprove or undermine the

26 fact that Plaintiffs have satisfied the commonality requirement.  To this end, even Acer's merits

27 based "no defect" defense supports class certification because it applies across the class; and Acer

28 cannot argue that any unique factors would require the trier of fact to undertake an individualized

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   examination of each class computer.  As such, the jury can evaluate Plaintiffs' common evidence –

2   and Acer's common defense – on a class-wide basis and reach an ultimate determination at trial.

3       **B.      Acer's Uniform Material Misrepresentations on the Packaging of the Class**

4               **Computers Are Appropriate for Class Adjudication**

5           Acer also argues that its representations regarding the ability of the class notebooks to

6   operate Vista Premium do not merit class certification because Plaintiffs cannot establish a

7   "classwide inference of reliance" arising from Acer's material misrepresentations on the

8   "packaging" of the notebooks.  *See* Acer's Opp. at 21:10-23:6.  This argument been expressly

9   rejected by the Supreme Court of California in *In re Tobacco II Cases* ("*Tobacco II*"), 46 Cal. 4th

10  298 (2009) – holding class-wide reliance on material misrepresentations can be presumed on a

11  class-wide basis – and *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) – holding

12  representations on the label or package of products are material and designed to induce reliance.

13          In *Tobacco II*, the Supreme Court of California addressed the issue of class member

14  reliance.  As in this case, plaintiffs in *Tobacco II* argued they were deceived by defendants'

15  omissions and affirmative misrepresentations which concealed the true nature of their products.  *See*

16  *Tobacco II*, 46 Cal. 4th at 307.  The defendants argued, as does Acer here, that commonality could

17  not be satisfied because individualized issues predominated as to whether each class member was

18  actually exposed to and relied on the misrepresentations.  *See id.* at 309.  In rejecting defendants'

19  argument the Court held that, "a presumption, or at least an inference, of reliance arises wherever

20  there is a showing that a misrepresentation was material …. A misrepresentation is judged to be

21  'material' if 'a reasonable man would attach importance to its existence or nonexistence in

22  determining his choice of action in the transaction in question.'"  *Id.* at 327.  Here, Acer's

23  misrepresentations and omissions regarding the ability of the class notebooks to operate Vista

24  Premium are not only material, but vital to class members' purchasing decisions.  No reasonable

25  consumer would purchase a computer that cannot adequately run the operating system that handles

26  the entire functionality of the computer.  Therefore, Acer's reliance on pre-*Tobacco II* authority is

27  unavailing because *Tobacco II* unequivocally establishes that class-wide reliance on Acer's material

28  misrepresentations can be presumed.  Furthermore, "[m]ateriality is an objective standard [ ] and is

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   susceptible to common proof in this case." *See Brazil v. Dell Inc.*, 2010 WL 5387831 * 5 (N.D.

2   Cal. Dec. 21, 2010) (internal citation omitted).

3       Acer's claim that misrepresentations on the "packaging" of the computers do not induce

4   reliance is also unpersuasive and has been rejected by the relevant legal authority.  As the Supreme

5   Court of California held in *Kwikset*, misrepresentations on the label or package of products are

6   intended to induce reliance and actionable under California's consumer protection statutes.  *See*

7   *Kwikset*, 51 Cal. 4th 310 (2011) ("Simply stated: labels matter. The marketing industry is based on

8   the premise that labels matter, that consumers will choose one product over another similar product

9   based on its label and various tangible and intangible qualities they may come to associate with a

10  particular source.")  *Kwikset* recognizes that unlike the misrepresentations contained in a warranty

11  discussed in *Campion v. Old Republic Home Protection, Inc.*  2011 WL 42759, * 13 (S.D. Cal. Jan

12  6, 2011) – which may or may not be viewed by class members – representations on the packaging

13  of the class notebooks are viewed at the time of purchase, relied upon by consumers and

14  appropriate for class adjudication.  *See Brazil*, 10 WL 5387831 * 5.

15      Here, as outlined in Plaintiffs' opening brief, every computer package had a label which

16  discussed its ability to run Vista, as well as a Vista sticker on the computer itself.  Acer's website

17  also promoted Vista.  Acer never disclosed that the class computers did not meet Microsoft's

18  recommended requirements and could not adequately run Vista.  Thus, *Tobacco II* and *Kwikset*,

19  hold that reliance on Acer's misrepresentations must be presumed and Plaintiffs' California

20  consumer protection claims can be adjudicated on a class-wide basis utilizing common proof.

21  **IV.   DEFENDANT'S MERITS BASED DEFENSES ARE UNCONVINCING AND**

22          **CANNOT DEFEAT CLASS CERTIFICATION**

23      Notwithstanding the fact that Acer's merits based defenses are common to the class and

24  irrelevant to class certification, they also fail to defeat Plaintiffs' Motion for Class Certification

25  because they have no factual basis and little evidentiary value.  Defendant's failure to produce any

26  reliable "evidence" in support of its Opposition exemplifies why courts do not decide cases on the

27  merits at the class certification stage.

28  / / /

A.   **Microsoft's Vista Logo Program Does Not Insulate Acer From Liability**

Acer argues that it "cannot be held liable" for producing and marketing defective notebooks because it has participated in Microsoft's logo program and complied with Microsoft's minimum system requirements.  *See* Acer Opp. at pp. 10:16-10:28.  Microsoft's system requirement cannot insulate or indemnify Acer from liability in this case.  Indeed, the Microsoft Vista Logo Program Client System Requirements specifically warned Acer:

> The Windows Vista logo is not intended to communicate the specific technical capabilities of any particular system, and *the Vista Logo program requirements do not represent the minimum system requirements for running any version of the Windows family of operating systems.*

> The presence of the Windows Vista logo on a hardware product does not mean that Microsoft endorses or certifies that product.  Microsoft does not test the quality of each hardware product.

*See* Exhibit B to Warshaw Reply Decl. (emphasis added).

Acer has not, and cannot, set forth any facts or law supporting its argument that compliance with Microsoft's requirements immunizes it from liability.  Furthermore, to the extent that Acer seeks to assert its compliance with Microsoft's logo program as a defense, this is precisely the type of common defense that is ideally suited for class-wide adjudication.  Therefore, Acer's reliance on Microsoft's requirements as a basis for denying class certification is unavailing.

B.   **The Testimony of Acer's Expert Alan Smith Is Unreliable and Unverifiable.**

Acer primarily relies on the opinion testimony of its expert Alan Jay Smith in its efforts to establish the class notebooks are not "defective."  As detailed in Plaintiffs' Motion to Strike, filed concurrently herewith, Dr. Smith's crude and unscientific testing methodology is wholly unreliable, incapable of reproduction or verification, and runs afoul of accepted industry standards.

As Dr. Smith admitted during his deposition on March 1, 2010, he essentially *made up* his tests on the Wolphs' computer and his testing methods did not comply with industry standards.  Dr. Smith utilized his analog wrist watch to measure performance and at times even forgot to stop the watch and failed to record any testing results.  *See* Deposition of Alan Jay Smith ("Smith Depo."), pp. 73:25-74:2, attached as Exhibit 1 to the Declaration of James J. Pizzirusso in Support of Plaintiffs' Motion to Strike; Declaration of Veronica Perez at ¶¶ 5-6.  Dr. Smith's experiments on

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1   the Wolphs' computer were not compared against any industry standard, or even Acer's internal

2   quality standards. *See* Smith Depo., pp. 75:17-76:3. Dr. Smith did not test any Acer laptop other

3   than the Wolphs' computer to compare their performance. *Id.*, pp. 76:22-77:23. Rather, he

4   performed "comparative" testing on two of his home computers, neither of which ran Vista

5   Premium, or had comparable hardware or memory configurations. *Id.* Dr. Smith has also refused

6   to produce these "comparable" computers, the wrist watch utilized to crudely "time" his tests, or

7   any of the "files"[3] used to measure performance, thereby making his testimony unreproducible. Dr.

8   Smith's conclusion that the Wolphs' computer suffered from a unique and intermittent hardware

9   defect was similarly untested (*id* at 36:14-20) and, as it turns out, wrong.

10      As detailed in Plaintiffs' Motion to Strike, the applicable law holds that Dr. Smith's *ad hoc*

11   testing of the Wolphs' computer is unreliable, based on unsound methodology and should not be

12   considered by the Court. *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 601-03 (9th Cir. 2010).

13   Furthermore, Dr. Smith's legal conclusions regarding the typicality of Plaintiffs and other elements

14   of class certification are also unavailing because they are wholly outside the scope of his expertise

15   and lack foundation. *See U.S. v. Scholl,* 166 F.3d 964, 973 (9th Cir. 1999). Finally, Dr. Smith's

16   parroting of Acer employee deposition testimony, without any examination of the data which

17   underlies that testimony (and contradicts it), is also improper expert testimony. Therefore, Dr.

18   Smith's opinions cannot serve as a basis for denying Plaintiffs' Motion for Class Certification.

19      C.   **Plaintiffs' Expert Testimony Complies With Industry Benchmarks and Sets**

20           **Forth Reliable Methods for Adjudicating This Case on a Class-wide Basis**

21      The declarations and examination performed by Plaintiffs and their experts stand in stark

22   contrast to the unreliable testing performed by Dr. Smith. Unlike Dr. Smith, Plaintiffs' expert

23   Ronald Alepin implemented well established principles and guidelines in his analysis, including:

24   (1) an examination and comprehensive review of Acer's benchmark testing and Windows

25   Experience Index Results for the class notebooks; (2) the deployment of industry standard

26   benchmark testing on the Wolphs' computer in a controlled environment that is capable of

27   _____

28   [3] Acer produced three of the files used by Dr. Smith to Plaintiffs after Dr. Smith's deposition.

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    reproduction; (3) the repeated application of these benchmark tests to the Wolphs' computer

2    utilizing "their original default factory conditions" when configured with 1 GB and 2.5 GB of

3    RAM; (4) the repeated application of these benchmark tests to a second Acer class computer when

4    configured with 1 GB and 2.5 GB of RAM; and (5) the recording and reporting of those results with

5    reference to reproducible benchmark scores.  *See* Alepin Decl. ¶¶ 6, 52-69.  Unlike Dr. Smith,

6    Alepin based his opinions on detailed analysis of Acer's databases, return rates and class surveys.

7         This reliable and verifiable analysis yielded two significant results.  First, the class

8    notebooks tested in their out of the box conditions suffer from serious performance problems as a

9    result of being equipped with 1 GB of shared system memory, regardless of other variables, such as

10   the programs installed by class members.  Second, and most important for the purposes of class

11   certification, this defect can be adjudicated and established on a class-wide basis without regard to

12   any alleged variances in computer configurations or the manner in which the computers were

13   utilized by individual class members.  Furthermore, these performance issues can be remedied on

14   class-wide basis by installing additional system memory on the class notebooks.[4]

15        **D.    Plaintiffs' Factual and Documentary Evidence Also Supports Class**

16              **Certification**

17        In support of their Motion for Class Certification, Plaintiffs have submitted factual and

18   documentary evidence establishing that: (1) there was a high number of consumer complaints

19   regarding the performance of the class notebooks; (2) the class notebooks experienced unusually

20   high return rates arising from a lack of sufficient system memory; and (3) industry experts

21   recommended that computers with Vista Premium should have more than 1GB of RAM.

22        This common evidence is consistent with Plaintiffs' theory of liability and applicable to the

23

24   _____

     [4] In a desperate attempt to discredit this evidence, Acer claims that "neither Ronald Alepin nor
25   Todd Stefan qualifies as an expert," but fails to cite a single fact or any authority in support of this
     conclusion.  *See* Acer's Opp. at 13:8-13:9.  Acer has not, and cannot, support its conclusory
26   assertion with any of the factors set forth in *Dukes* as a proper basis for examining expert evidence.
     *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d at 601-03.  Plaintiffs' experts have set forth their
27   qualifications, the basis for their opinions and supported their conclusions with tried and true testing
     methodology.  This evidence is probative, and supports class certification.
28

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   class.  For example, evidence that industry experts recommended Vista Premium be equipped with

2   more than 1GB of RAM is probative of the fact that Acer should have been aware of the defect and

3   should not have relied on its participation in Microsoft's Logo Program as a defense.  Similarly, the

4   fact that the Class notebooks experienced extremely high return rates and numerous consumer

5   complaints relating to their slowness and freezing is probative of the existence of the defect and

6   Plaintiffs' theory of liability.  Finally, Acer's internal emails are probative because they reveal

7   knowledge of the defect and an attempt to reduce return rates while acknowledging that the systems

8   had insufficient memory.  This factual and documentary evidence supports class certification

9   because it demonstrates the common means by which the trier of fact can examine Acer's liability.

10  **V.**      **PLAINTIFFS' PROPOSED CLASS IS NARROWLY TAILORED,**

11           **ASCERTAINABLE AND EASILY MANAGEABLE**

12       **A.**    **Plaintiffs Have Appropriately and Narrowly Defined Their Class to Include All**

13              **Purchasers of the Alleged Defective Notebooks**

14       Acer contends that Plaintiffs' class definition is overbroad and unascertainable because the

15  class notebooks are *not defective.  See* Acer Opp. at pp. 10:4-10:13.  Like Acer's commonality

16  argument, its claim that ascertainability is not satisfied because there is "no defect" constitutes an

17  attack on the merits that violates well settled class action principles.  *See Wolin,* 617 F.3d at 1173.

18       The applicable law holds that a class definition is adequate and ascertainable when it sets

19  forth: "A sufficient basis upon which to determine the scope of the class and the propriety of

20  permitting plaintiffs to represent all or a part of it."  Rubenstein, Conte & Newberg, Newberg on

21  Class Actions (4th Ed. 2010) at § 6:14 (quoting *Thomas S. by Brooks v. Flaherty*, 902 F.2d 250, 16

22  Fed. R. Serv. 3d 851 (4th Cir. 1990); *see Brazil*, 10 WL 5387831 * 2.

23       Here, Plaintiffs' theory of liability is that Acer's notebooks containing 1 GB or less of RAM

24  do not have sufficient system memory to operate Visa Premium.  In accordance with this theory of

25  liability, Plaintiffs have defined the putative class to include:

26              All persons and entities who reside in the United States who have
              purchased a new Acer notebook computer from Acer or an Acer
27              Authorized Reseller, not for resale, that came pre-installed with a
              Microsoft® Windows Vista Home Premium, Business, or Ultimate
28              operating system, and contained 1GB of Random Access Memory or
              less as shared memory for both the system and graphics.

1    If Plaintiffs succeed on the merits, then each member of the putative class would have an

2    interest in the lawsuit because they purchased a defective notebook.  Therefore, Plaintiffs' class

3    definition complies with the applicable legal standard because it sets forth objective criteria – *i.e.*,

4    purchase of a laptop with 1 GB or less of RAM – by which class members may determine whether

5    they are included in the class.

6    **B.      The Possibility That All Class Members Cannot Participate in the Recovery**

7    **Does Not Defeat Ascertainability or Class Certification**

8    Acer further argues the class definition is improper because it does not exclude purchasers

9    who returned their defective notebooks, and therefore were not injured.  This argument has been

10   explicitly rejected by the overwhelming authority holding that a class may include "members who

11   have not been injured or do not wish to pursue claims against the defendant." *Elliott v. ITT Corp.*,

12   150 F.R.D. 569, 575 (N.D. Ill. 1992); *In re Static Random Access Memory (SRAM) Antitrust*

13   *Litigation*, 2008 WL 4447592, at *5 (N.D. Cal. Sept. 29, 2008) (plaintiffs need only demonstrate

14   that injury to "all (or nearly all) members of the class" can be shown with common evidence).

15   Accordingly, the fact that some members of the class may have returned their defective

16   notebook is not a basis to deny class certification or hold that the class definition is improper.  As

17   part of the claims administration process, the parties may require class members to file claims and

18   participate in the settlement or judgment by, *inter alia*, submitting proofs of purchase, SKU

19   numbers or legal declarations regarding their purchase.  Furthermore, according to Acer's employee

20   Mark Groveunder, Acer maintains extensive return data and "examines every returned notebook."

21   *See* Groveunder Decl., ¶ 20, Docket No. 111-1.  Therefore, the claims administration process is

22   manageable and the ascertainability requirement is satisfied.

23   **VI.   PLAINTIFFS ARE TYPICAL AND ADEQUATE CLASS REPRESENTATIVES**

24   In order to satisfy the typicality requirement, "the named plaintiff need not have suffered an

25   identical wrong.  Rather, the claims of the putative class must be 'fairly encompassed by the named

26   plaintiff's claims.'"   *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053,

27   1063 (N.D. Cal. 2007).  "Under the rule's permissive standards, representative claims are 'typical'

28   if they are reasonably coextensive with those of absent class members; they need not be

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  substantially identical." *Hanlon*, 150 F.3d at 1020; *Wolin,* 617 F.3d at 1175.

2       Acer claims that Plaintiffs have not satisfied the typicality requirement because the

3  problems associated with their laptop arose from their use of the software program EMI.  This

4  argument is easily dismissed because Plaintiffs experts have eliminated EMI as the cause of

5  Plaintiffs' computer problems by testing it as it would have been in out of the box conditions, prior

6  to the installation of EMI.  *See* Alepin Decl., ¶¶ 6, 52-69.  Furthermore, although Acer's expert has

7  attempted to attribute the Wolphs' problems to EMI, he has admitted that it is "entirely possible"

8  that a consumer's problems while running software (such as EMI) can be caused by a lack of

9  system memory to run the operating system.  Smith Depo., pp. 30:12-31:7.

10       Acer's alternative theory that a defective memory module may be to blame for the Wolphs'

11  was not tested by its expert, has no basis and cannot defeat class certification.  *See* Smith Depo., pp.

12  40:6-41:2 (admitting he can't prove whether the alleged memory defect was cause by the defective

13  module or a damaged memory chip on his computer purchased from eBay.");  Declaration of

14  Suwandi Chadra, ¶ 6 ("I never experienced any technical issues surrounding the failure of the

15  laptop to immediately recognize the full amount of memory inserted within its memory sockets.");

16  Declaration of Ronald S. Alepin in Support of Plaintiffs' Motion to Strike, ¶¶ 23-24. Moreover, as

17  the Ninth Circuit observed in *Wolin*, "[t]ypicality can be satisfied despite different factual

18  circumstances surrounding the manifestation of the defect." *Wolin,* 617 F.3d at 1175.  Plaintiffs

19  have no adverse interests to the class and easily satisfy the typicality requirement.

20  **VII.  ACER'S ATTACK ON THE ADEQUACY OF CLASS COUNSEL IS DESPERATE**

21         **AND FRIVOLOUS**

22       In a desperate effort to prevent class certification, Acer also argues that Plaintiffs' counsel

23  are inadequate because, they have not presented a trial plan to address choice of law issues, and

24  they have not preserved the original 512 MB of RAM memory from the Wolphs' notebook.  *See*

25  Acer Opp. at 18:25-19:24.  Acer's "trial plan" argument is specious because class counsel have

26  carefully set forth the reasons that California law should apply to this case.  Furthermore, it was

27  impossible for class counsel to preserve the original 512 MB of RAM memory chip originally

28  installed in the Wolphs computer, because it was disposed of during repairs on the Wolphs'

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  computer *prior to Class Counsel ever being retained*.  *See* Warshaw Decl., ¶¶ 3-5.  Since entering

2  the case, class counsel and their experts have taken careful steps to preserve evidence and the chain

3  of custody.  *See Id.*; Stefan Decl., ¶¶ 5-10.  As such, this case is a far cry from *Sweet v. Pfizer*, 232

4  F.R.D. 360, 370 (C.D. Cal. 2005) where the court found class counsel inadequate because they

5  failed to present "any specific information about counsel's education or experience;" "admittedly

6  lack experience with class actions;" and "[their] moving and reply papers [were] so strewn with

7  errors that at times the argument simply could not be ascertained."

8  **VIII.   A CLASS ACTION IS THE SUPERIOR METHOD FOR ADJUDICATING THIS**

9  **CLASS ACTION LAWSUIT**

10        Acer's argument that class adjudication is not superior because there are not enough

11  lawsuits on file is not supported by any legal authority.  To the contrary, the applicable law holds

12  that this fact favors class adjudication because it shows the interest in pursuing individual action are

13  outweighed by the interest in consolidating class members small money claims in a single class

14  action.  *See Wolin*, 617 F.3d 1176 ("[i]t is far more efficient to litigate [these issues] on a class-wide

15  basis rather than in thousands of individual and overlapping lawsuits … that could involve

16  duplicating discovery and costs that exceed the extent of proposed class members' individual

17  injuries.")  Acer's argument that the Northern District of California does not have a strong enough

18  interest in this case is defeated by the fact that Acer unilaterally inserted a California choice of law

19  provision in its contracts, Acer is headquartered in this District, incorporated in this State, and its

20  alleged unlawful conducted emanated from this District.  Therefore, no district has a stronger

21  interest in this action.  Finally, Acer's argument that individual issues predominate is just a

22  reassertion of its commonality defenses, and defeated by the fact that this case raises common

23  issues of law and fact which are ideally suited for class adjudication.  *See Wolin*, 617 F.3d 1173.

24  **IX.   CONCLUSION**

25        For the aforementioned reasons, Plaintiffs respectfully request that the Court grant their

26  Motion for Class Certification.

27  DATED: March 7, 2011                    _____/s/_____

28                                                              Daniel L. Warshaw (185365)
                                                                 dwarshaw@pswplaw.com

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Bobby Pouya (245527)
bpouya@pswplaw.com
**Pearson, Simon, Warshaw & Penny, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

James J. Pizzirusso (admitted pro hac vice)
jpizzirusso@hausfeldllp.com
Melinda Coolidge (admitted pro hac vice)
mcollidge@hausfeldllp.com
**Hausfeld, LLP**
1700 K Street NW
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201

Michael P. Lehmann (77152)
mlehmann@hausfeldllp.com
**Hausfeld, LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile:  (415) 693-0770

Jori Bloom Naegele (admitted pro hac vice)
jbnaegele@gmail.com
Robert D. Gary (admitted pro hac vice)
rdgary@gmail.com
**Gary, Naegele & Theado, LLC**
446 Broadway Avenue
Lorain, OH 44052
Telephone: (440) 244-4809
Facsimile:  (440) 244-3462

*Attorneys for Plaintiffs and the Proposed Class*