IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORA and CLAY WOLPH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACER AMERICA CORPORATION,<br><br>Defendant.<br>_____/ | No. C 09-01314 JSW<br><br>**ORDER ON MOTION FOR CLASS CERTIFICATION** |

Now before the Court is the motion for class certification filed by Plaintiffs Lora and Clay Wolph ("Plaintiffs"). The Court finds that this matter is appropriate for disposition without oral argument. *See* Civ. L.R. 7-1(b). The Court DENIES Plaintiffs' motion to strike the testimony of Dr. Alan Jay Smith and will consider Plaintiffs' arguments as they bear on the weight of Dr. Smith's testimony. (Doc. no. 115.)

Having considered the parties' pleadings and papers and the relevant legal authority, the Court hereby conditionally GRANTS Plaintiffs' motion for class certification with leave to amend the complaint. (Doc. no. 95.)

**BACKGROUND**

Plaintiffs filed this putative class action against Acer America Corporation ("Acer") based on the allegedly defective Acer notebook computer they purchased. Plaintiffs allege that because of the defective nature of the notebook computers, the notebooks have serious problems, including that they freeze during use, crash, require frequent restarts and experience slow loading times. (FAC ¶ 3.) Plaintiffs allege that the reason for these defects is that Acer's

notebook computers are sold with Microsoft® Vista Home Premium, Business, or Ultimate operating systems (collectively, "Vista Premium") pre-installed, but the notebook computers do not contain sufficient memory to properly run Vista Premium. (*Id.* ¶¶ 2, 3.)

Defendants filed a motion to dismiss the complaint, which the Court granted in part and denied in part by Order entered September 14, 2009. Plaintiffs filed an amended complaint on October 1, 2009. The first amended complaint alleges the following claims for relief: (1) violation of the Consumer Legal Remedies Act, Cal. Civil Code §§ 1750 et seq.; (2) breach of express warranty; (3) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq.; (4) violation of the false advertising law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; and (5) violation of the unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200.

In the instant motion, Plaintiffs have amended the class definition stated in the operative complaint (FAC ¶ 100) and now seek class certification pursuant to Federal Rule of Civil Procedure 23 for the following class:

> All persons and entities who reside in the United States who have purchased a new Acer notebook computer from Acer or an Acer Authorized Reseller, not for resale, that came pre-installed with a Microsoft® Windows Vista Home Premium, Business, or Ultimate operating system, and contained 1GB of Random Access Memory or less as shared memory for both the system and graphics.

(Pls' Mot. for Class Cert. ("Mot.") at 14).

## ANALYSIS

"Class certifications are governed by Federal Rule of Civil Procedure 23," and a plaintiff seeking class certification bears the burden of "demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007); *see also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended* 273 F.3d 1266 (9th Cir. 2001) (trial court must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have been met). Any doubts regarding the propriety of class certification generally should be resolved in favor of certification. *See, e.g., Gonzales v. Arrow Fin. Servs., LLC*, 489 F.

2

1  Supp. 2d 1140, 1154 (S.D. Cal. 2007). Further, "[c]lass certification is not immutable, and class
2  representative status could be withdrawn or modified if at any time the representatives could no
3  longer protect the interests of the class." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir.
4  2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948-49 (9th
5  Cir. 1979)).

In opposition to the motion for class certification, Acer argues that Plaintiffs cannot satisfy the requirement of ascertainability, the typicality and adequacy requirements of Rule 23(a), or the predominance and superiority requirements of Rule 23(b)(3). As a threshold matter, the Court turns first to the question whether Plaintiffs have defined an ascertainable class.

**A.     Ascertainability**

As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). "'Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.'" *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliott v ITT Corp*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992)). "A class definition should be 'precise, objective and presently ascertainable.'" *Rodriguez v. Gates,* 2002 WL 1162675 at *8 (C.D. Cal. 2002) (quoting *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)); *see also* Manual for Complex Litigation, Fourth § 21.222 at 270-71 (2004). While the identity of the class members need not be known at the time of certification, class membership must be clearly ascertainable. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member. *See, e.g., Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995).

Acer contends that Plaintiffs fail to define an ascertainable class because the proposed class of purchasers who experienced problems is too subjective in that not all purchasers

3

1  experienced problems such as Plaintiffs did. (Defendant's Opposition to Pls's Mot. for Class
2  Cert. ("Opp.") at 9.) Where Plaintiffs' allegations of the existence of a defect are susceptible to
3  proof by generalized evidence, the actual injuries suffered by each class member need not be
4  identical to demonstrate that an identifiable and ascertainable class exists. *See Wolin v. Jaguar*
5  *Land Rover North America, LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010). Acer argues that
6  Plaintiffs fail to show that the Acer notebooks were defective such that all purchasers of the
7  notebooks would have standing as members of the class. "While plaintiffs need not make more
8  than allegations as to their substantive claims, whether the suit is appropriate for class
9  resolution must be actually demonstrated, not just alleged, to the district court's satisfaction."
10 *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 590 (9th Cir. 2010) (en banc). Plaintiffs have
11 presented evidence that sufficiently demonstrates the plausibility of their claim that Acer's
12 notebooks containing 1 GB or less of RAM do not have sufficient memory to operate Vista
13 Premium and are therefore defective, including Acer's internal benchmark tests and analyses
14 and Plaintiffs' expert's testimony. (Pizzirusso Decl., Ex. 22 ¶¶ 56-59 (Declaration of Ronald S.
15 Alepin ISO Pls' Mot. Class Cert.) ("Alepin Decl.") (filed under seal); Pizzirusso Decl. Exs. 10-
16 16 (filed under seal).) Acer offers competing evidence and expert testimony as to the existence
17 of a defect, but the Court need not decide the merits of the class claims at the class certification
18 stage. *See Dukes*, 603 F.3d at 602-03 and n.22. The Ninth Circuit has held that "proof of the
19 manifestation of a defect is not a prerequisite to class certification." *Wolin,* 617 F.3d at 1173.
20 Acer further argues that the proposed class of "all persons and entities" who purchased
21 an Acer notebook, as defined, is too broad because it includes consumers who already received
22 their remedy by returning the notebook for a full refund. (*Id*. (citing *Stearns v. Select Comfort*
23 *Retail Corporation*, --- F. Supp. 2d ----, 2010 WL 2898284 at *20 (N.D. Cal. July 21, 2010)).)
24 In *Stearns*, the district court held that the putative class, defined as "all persons located within
25 California or Florida who used and/or purchased the Sleep Number Bed® by Select Comfort
26 [during the class period] and whose beds contain mold," was not ascertainable because the class
27 would include persons who had received refunds or replacement parts or who had not suffered
28 any damages at all. *Id*. at *20. The *Stearns* court held that "'[s]uch members have no injury

4

and no standing to sue.'" *Id.* (quoting *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, *6 (N.D. Cal. Dec. 17, 2009)).

Plaintiffs suggest that if the litigation reaches the claims administration process, the parties could require class members to file claims by verifying their notebook purchases. (Reply at 14.) At the class certification stage, however, the Court must be satisfied that the proposed class definition is sufficiently "precise, objective and presently ascertainable." *O'Connor*, 184 F.R.D. at 319. The proposed class definition is overbroad to the extent that it would include purchasers who have returned their notebooks or have otherwise disposed of them. To cure the overbreadth of the proposed class as currently defined, the Court determines that a more precise class definition would require putative class members to have purchased **and have not returned for refund** an Acer notebook, as defined. *See Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (recognizing court's inherent power to modify proposed class definitions to make them sufficiently definite) (citing *Hagen v. City of Winnemucca,* 108 F.R.D. 61, 64 (D. Nev. 1985)). The Court finds that the following definition would make the proposed class more ascertainable:

> All persons and entities who reside in the United States who have purchased, **and have not returned for refund**, a new Acer notebook computer from Acer or an Acer Authorized Reseller, not for resale, that came pre-installed with a Microsoft® Windows Vista Home Premium, Business, or Ultimate operating system, and contained 1GB of Random Access Memory or less as shared memory for both the system and graphics.

The Court grants Plaintiffs leave to amend the complaint to conform the class definition to the definition as modified by the Court. *See* Fed. R. Civ. Proc. 15(a). The Court proceeds with the Rule 23 analysis under the Court-modified class definition.

**B.      Rule 23(a) Requirements**

Class certification is appropriate only if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

5

Fed. R. Civ. P. 23(a). "'Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage.'" *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (quoting *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir. 1983)).

### 1. Numerosity

In order to meet their burden on Rule 23(a)'s "numerosity" requirement, Plaintiffs must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In this case, the record demonstrates that the proposed class consists of approximately 1 million persons. (*See* Declaration of James Pizzirusso ISO Pls' Mot. Class Cert., Ex. 2 (filed under seal).) Plaintiffs have met their burden to show that the class is sufficiently numerous. *See Immigrant Assistance Project of L.A. County Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (affirming certification of 11,000 member class); *see also White v. E-Loan*, 2006 WL 2411420, * 2 (N.D. Cal. Aug. 18, 2006) (finding proposed class of 100,000 "easily satisfies the numerosity requirement").

### 2. Commonality

Commonality requires that there be "questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. Acer does not challenge Plaintiffs' showing of commonality but rather focuses on the issues of typicality, adequacy, ascertainability and predominance.

Plaintiffs identify the following issues of fact and law common to the class: (1) whether Acer's notebooks pre-installed with Vista Premium and only 1GB of RAM shared between the system and graphics are defective; (2) whether Acer knew or should have known of the defect

6

in these computers; (3) whether Acer misrepresented or omitted material information about the ability of its notebooks to effectively and adequately run the Vista Premium OS; and (4) whether Plaintiffs and the class have suffered a loss as the result of Acer's acts and omissions. (Mot. at 19; FAC ¶ 115.)

Here, the claims of the proposed class stem from the same set of core facts as to whether Acer sold notebook computers with the alleged defect during the class period. In light of the fact that Rule 23(a)'s commonality requirement is "less rigorous" than Rule 23(b)(3)'s predominance requirement, the Court finds that the proposed class shares sufficient commonality to satisfy the requirements of Rule 23(a)(2). *Cf. Hanlon*, 150 F.3d at 1019-20 (commonality requirement was satisfied because the claims of the proposed class stemmed from the same source, the defendant's product).

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As with the commonality requirement, the typicality requirement is applied permissively. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)).

Acer contends that Plaintiffs, the Wolphs, are not typical of the putative class for several reasons. First, Acer contends that Plaintiffs cannot pursue their claims under the same legal or

7

1  remedial theories as absent class members because of variations in the consumer protection
2  statutes of other states. (Opp. at 2-8, 16.)

3  Turning now to the question of controlling substantive law, the Court determines as a
4  threshold matter that Plaintiffs have sufficiently demonstrated that application of California law
5  to the nationwide class claims satisfies constitutional due process requirements under *Phillips*
6  *Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). Acer does not dispute that it has significant
7  contacts with California but contends that Plaintiffs have failed to demonstrate that absent class
8  members outside of California would have had any expectation that California law would
9  govern their claims or transactions or that California has significant contacts to the claims
10 asserted by each class member, citing *Shutts*. (Opp. at 5-7.)

11 In *Shutts*, the Supreme Court considered whether the law of Kansas should apply to all
12 the claims of the nationwide class action brought in Kansas state court seeking interest on
13 royalty payments for natural gas produced from land leased by the defendant. The defendant in
14 *Shutts* was a Delaware corporation with its principal place of business in Oklahoma. The
15 defendant urged that the Kansas courts should apply the laws of the states where the leases at
16 issue were located, or at least apply Texas and Oklahoma law because so many of the leases
17 were in those states. 472 U.S. at 814-15. The Supreme Court held that the Kansas courts
18 properly exercised jurisdiction over the class action but held that Kansas law did not apply to all
19 the claims of all class members where "99% of the gas leases and some 97% of the plaintiffs in
20 the case had no apparent connection to the State of Kansas except for this lawsuit." *Id*. at 815.
21 The Supreme Court determined that there was "no indication" that the parties to leases outside
22 of Kansas had any expectation that Kansas law would control. *Id*. at 822. By contrast, where
23 Acer is incorporated in California and has its principal place of business and headquarters in
24 San Jose, California, consumers who purchase an Acer notebook would have some expectation
25 that California law would apply to any claims arising from alleged defects such that the
26 application of California law would not be arbitrary or unfair. *See Chavez v. Blue Sky Natural*
27 *Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).

28

8

1  Acer further argues that California's consumer protection statutes do not apply to
2 nonresidents whose transactions occurred outside the forum state. A federal court sitting in
3 diversity must look to the forum state's choice of law rules to determine the controlling
4 substantive law. *Zinser,* 253 F.3d at 1187. California law sets forth two different choice of law
5 tests:

> California has two different analyses for selecting which law should be applied in an action. When the parties have an agreement that another jurisdiction's law will govern their disputes, the appropriate analysis for the trial court to undertake is set forth in *Nedlloyd* [*Lines B.V. v. Superior Court*, 3 Cal.4th 459 (1992)], which addresses the enforceability of contractual choice-of-law provisions. Alternatively, when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law. As we shall explain, a trial court considering nationwide class certification might be required to utilize both analyses.

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 914-15 (Cal. 2001).

Plaintiffs allege that Acer inserted a California choice of law provision in the warranty of each of the class notebooks: "All product warranties and warranty options shall be governed exclusively by the laws of the State of California exclusive of its choice of law provisions." (FAC, Ex. E.) The Court thus turns to the *Nedlloyd* analysis to consider the enforceability of this choice of law provision. "Pursuant to *Nedlloyd*, the trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope." *Washington Mutual*, 24 Cal. 4th at 916. "If the trial court finds that the class claims fall within the scope of a choice-of-law clause, it must next evaluate the clause's enforceability." *Id*. Acer does not challenge the enforceability of this choice of law provision under the test adopted in *Nedlloyd* and concedes that California and federal law apply to Plaintiffs' warranty claims, namely, the claims for breach of express warranty and violation of the MMWA. (Opp. at 3 n.1.)

With respect to the non-warranty based claims, that is, the false advertising, CLRA and UCL claims, Acer bears the burden of proof that the law of a jurisdiction other than California should apply. *Zinser*, 253 F.3d at 1187 (citing *Washington Mutual*, 24 Cal. 4th at 919-20). "[E]ven where its own law may be constitutionally applied, California follows a three-step

9

1  'governmental interest analysis' to address conflict of laws claims and ascertain the most
2  appropriate law applicable to the issues where there is no effective choice-of-law agreement."
3  *Washington Mutual*, 24 Cal. 4th at 919.  Acer has adequately demonstrated the first step, which
4  requires Acer to "identify the applicable rule of law in each potentially concerned state and
5  must show it materially differs from the law of California."  *Id*.  (*See* Opp. at 3-4.)  The second
6  step of the governmental interest analysis is to "determine what interest, if any, each state has in
7  having its own law applied to the case."  *Washington Mutual*, 24 Cal. 4th at 920.  As other
8  courts have recognized, "'[e]ach plaintiff's home state has an interest in protecting its
9  consumers from in-state injuries cause by foreign corporations and in delineating the scope of
10 recovery for its citizens under its own laws.'" *In re HP Inkjet Printer Litigation*, 2008 WL
11 2949265, *6 (N.D. Cal. July 25, 2008) (quoting *In re Ford Motor Co. Ignition Switch Prod.
12 Liab. Litig.*, 174 F.R.D. 332, 348 (D. N.J. 1997)).
13       Proceeding to the third step of the governmental interest test, the court must "select the
14 law of the state whose interests would be 'more impaired' if its law were not applied."
15 *Washington Mutual*, 24 Cal. 4th at 920.  Acer does not identify any particular state that would
16 have a greater interest in having its laws applied over California state law.  Unlike *Cohen v.
17 DirectTV, Inc.*, 178 Cal. App. 4th 966, 979 (2009), where the court of appeal recognized that the
18 rights under service contracts would be governed by the law of the state where the satellite
19 television subscribers resided, Acer does not point to a contract or other basis for applying
20 foreign law to Plaintiffs' false advertising, CLRA or UCL claims.  Acer's reliance on *In re
21 Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016-18 (7th Cir. 2002) is misplaced because the
22 court of appeals there applied the choice of law test under Indiana law to hold that the injury
23 occurs where the consumer is located: "Indiana is a *lex loci delicti* state: in all but exceptional
24 cases it applies the law of the place where harm occurred."  Under California law, however, the
25 choice of law inquiry compares each non-forum state's law and interest with California's law
26 and interest.  Because Plaintiffs have demonstrated that Acer's notebooks were likely
27 "researched, designed, developed and tested within California" and that the "decisions
28 regarding marketing, sales, and pricing" likely would have been made in California,

10

California's interest in having its consumer protection laws applied to claims involving those notebooks outweigh any other particular state's interest in having its laws applied. (Declaration of Daniel L. Warshaw Regarding Pls' Reply ISO Mot. Class Cert., Ex. A ¶ 3 (Declaration of Ares Yang dated Jan. 24, 2008).) Applying California choice of law principles, the Court concludes that California law applies to Plaintiffs' classwide claims and that each class member would make similar legal arguments about Acer's liability to satisfy typicality.

Acer further argues that Ms. Wolph experienced problems with the notebook only when using certain software (the "EMI program") and that the Wolphs' notebook had several problems that may have caused the alleged problems, such as a defective memory module connector that likely caused the computer intermittently to recognize only 512 MB of the preinstalled 1 GB of RAM. (Declaration of Alan Jay Smith ISO Opp. ("Smith Decl.") ¶¶ 121-138.) Acer thus contends that the Wolphs are subject to certain defenses concerning causation that would make them atypical of the putative class. (Opp. at 16-17.)

Though Acer cites evidence that the Wolphs' particular use of their notebook computer or other factors caused the alleged problems, the typicality of the claims at issue here arises from the question whether Acer sold notebook computers that were incapable of properly operating the Microsoft® Vista Premium operating system with which they were marketed, packaged and sold. That conduct by Acer is not unique to the named Plaintiffs here. Plaintiffs have placed the causation of the computer problems at issue by presenting evidence that Plaintiffs' experts have eliminated the EMI program as the source of the problems by testing the Acer notebook under out-of-the-box conditions, prior to installation of the EMI program. (Alepin Decl. ¶¶ 6, 52-69 (filed under seal).) "Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The Court finds that Plaintiffs have satisfied the typicality requirement.

**4. Adequacy of Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process

11

1 concerns, absent class members must be afforded adequate representation before entry of a
2 judgment which binds them." *Hanlon*, 150 F.3d at 1020. In order to determine whether the
3 adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the
4 representative plaintiffs and their counsel have any conflicts of interest with other class
5 members, and (2) will the representative plaintiffs and their counsel prosecute the action
6 vigorously on behalf of the class?" *Staton*, 327 F.3d at 957; *see also Fendler v. Westgate*
7 *California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and
8 counsel also must have sufficient "zeal and competence" to protect the interests of the class).
9 "'[T]he adequacy-of-representation requirement is satisfied as long as one of the class
10 representatives is an adequate class representative.'" *Rodriguez v. West Publishing Co.*, 563
11 F.3d 948, 961 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust*
12 *Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) (brackets added in
13 *West*)).

14 Acer contends that Plaintiffs fail to demonstrate that they have no conflicts with other
15 putative class members because bare assertions are insufficient to satisfy Rule 23. Where
16 Plaintiffs purport to represent a class of consumers who purchased similar Acer notebook
17 computers , and Acer has not identified "a substantive issue for which there is a conflict of
18 interest," the Court determines that Plaintiffs will fairly and adequately represent the interests of
19 the class. *Staton,* 327 F.3d at 959.

20 With respect to Acer's challenge to the adequacy of class counsel for failure to present a
21 trial plan to address choice of law issues and failure to preserve evidence, the Court finds that
22 Plaintiffs' counsel has adequately addressed those issues and finds no evidence in the record of
23 deficiencies or conflicts of interest that would disqualify counsel. (*See* Pizzirusso Decl. ¶¶ 2-4.)
24 The Court concludes, based on the record presented, that Plaintiffs' counsel will vigorously
25 prosecute this action on behalf of the class.

26 **C.    Rule 23(b)(3) Requirements**

27 In order to certify a class under Rule 23(b)(3), Plaintiffs must establish that "common
28 questions . . . 'predominate over any questions affecting only individual members,'" and also

12

1  must establish that class resolution is "'superior to other available methods for the fair and
2  efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P.
3  23(b)(3)). Acer contends that Plaintiffs cannot satisfy the predominance requirement because
4  issues of causation and damages raise individual issues.

### 1. Predominance

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." This inquiry is more searching than the Rule 23(a)(2) "commonality inquiry." . . . However, the determination rests not on whether individualized damages determinations will be necessary but on "legal or factual questions that qualify each class member's case as a genuine controversy."

*Thomas v. Baca*, 231 F.R.D. 397, 402 (C.D. Cal. 2005) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). In order to determine whether common issues predominate, the Court neither decides the merits of the parties' claims or defenses nor does it decide "whether the plaintiffs are likely to prevail on their claims. Rather, the Court must determine whether plaintiffs have shown that there are plausible classwide methods of proof available to prove their claims." *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 489 (C.D. Cal. 2006).

Acer contends that Plaintiffs have failed to address the predominance requirement as to each of their claims for relief. In particular, Acer argues that individual questions concerning the Plaintiffs' claims under the CLRA, FAL and UCL will predominate over common questions because these claims are based on allegations of fraudulent misrepresentations and that Plaintiffs are not entitled to a classwide presumption of reliance or causation. (Opp. at 20-21.) Contrary to Acer's argument that Plaintiffs' fraud-based claims would require analysis of each potential class member's motivation, Plaintiffs' claims do not require individualized showing of reliance. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008). As to class claims under the UCL, the state supreme court has stated that "relief under the UCL is available without individualized proof of deception, reliance and injury." *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009). *See In re Steroid Hormone Product Cases,* 181 Cal. App. 4th 145, 158 (2010) (disagreeing with *Cohen* "to the extent the appellate court's opinion might

13

1 be understood to hold that plaintiffs must show class members' reliance on the alleged
2 misrepresentations under the UCL").

3       Under California law, reliance may be presumed from a showing that a
4 misrepresentation was material. *Tobacco II Cases*, 46 Cal. 4th at 327. A plaintiff need not
5 "demonstrate individualized reliance on specific misrepresentations to satisfy the reliance
6 requirement." *Id*. Materiality of the misrepresentation is an objective standard that is
7 susceptible to common proof. *Brazil v. Dell Inc.*, 2010 WL 5387831, *5 (N.D. Cal. Dec. 21,
8 2010). *See also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007)
9 ("Materiality, for CLRA claims, is judged by the effect on a "reasonable consumer.'") (citation
10 omitted).

11       Plaintiffs allege that the packaging for the notebooks misrepresented that the notebooks
12 met the recommended system requirements for running Vista Premium and that the notebooks
13 could effectively and adequately run with a Vista Premium operating system. (*See* FAC ¶ 160.)
14 Plaintiffs contend that Acer made these misrepresentations on a label on the outside of the box,
15 as well as a Windows Vista sticker on the notebook itself. (Mot. at 13; Pizzirusso Decl., Ex. 17
16 (filed under seal).) The statements made on the packaging and labels present common proof on
17 the issues of materiality and falsity. Without deciding here the question whether any of these
18 alleged misrepresentations were material, it is reasonable to infer that they were communicated
19 to all class members because they were shown at the point of purchase. *Brazil*, 2010 WL
20 5387831 at *5. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 210 Cal. Rptr. 3d 741,
21 755 (2011) (recognizing materiality of label representations).

22       Plaintiffs have identified other common sources of proof. Plaintiffs' experts have
23 established mechanisms that purport to examine the existence of the alleged defect under out-
24 of-the-box conditions to eliminate individualized user variables. (Alepin Decl. ¶¶ 52-69 (filed
25 under seal).) Plaintiffs also rely on Acer's benchmarking results, retailer return rates, consumer
26 return surveys, customer inquiry databases and third party recommendations regarding Vista.
27 (Pizzirusso Decl., Exs. 10-16 (filed under seal).) The Court concludes that Plaintiffs have
28

14

1 presented a plausible class-wide method of proof. Thus, Plaintiffs have met their burden to
2 show that common questions predominate.

### 2. Superiority

A plaintiff can satisfy the superiority requirement when he or she can show that "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In order to make this determination, the Court should consider the following factors: "the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

There is no other pending litigation that relates to the issues raised herein. Thus, the first two factors weigh in favor of certification. Furthermore, there is nothing in the record to suggest that concentrating the litigation in this forum would be undesirable or that a class action would be unmanageable. Plaintiffs point out that the amount of damages sought for each class member does not exceed $600 (Mot. at 24) and argue that it is unfeasible and impracticable for each class member to institute an individual claim for relief, making class treatment more efficient than litigating on an individual basis. *Wolin*, 617 F.3d at 1175-76. The Court concludes that Plaintiffs have met their burden to show that a class action would be a superior method for resolving the litigation.

Under the Court-modified definition of the class, Plaintiffs have met their burden to show that the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied. Plaintiffs are granted leave to amend the complaint to conform the class definition to the modified definition of the class.

### CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification is CONDITIONALLY GRANTED WITH LEAVE TO AMEND the first amended complaint to

conform substantially to the Court-modified definition of the class. Plaintiffs must file an amended pleading by April 1, 2011. If Plaintiffs fail to amend the class action complaint, the class will be decertified on the ground that the class definition is overbroad.

**IT IS SO ORDERED.**

Dated: March 25, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE