IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORA and CLAY WOLPH, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>ACER AMERICA CORPORATION,<br><br>    Defendant. | No. C 09-01314 JSW<br><br>**ORDER REGARDING MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS** |

This matter comes before the Court on consideration of the unopposed motion for attorneys' fees, reimbursement of costs, and incentive awards filed by Plaintiffs Lora and Clay Wolf ("Plaintiffs"). The Court has considered the parties' papers, relevant legal authority, and the record in this case.

On October 4, 2013, the Court held a final approval hearing. Counsel for Plaintiffs ("Class Counsel") and counsel for Defendant Acer America Corporation ("Acer") appeared at that hearing. Apart from counsel, there were no other persons who appeared to argue either for or against the settlement. For the reasons set forth in the remainder of this Order, the Court HEREBY GRANTS, IN PART the motion for attorneys' fees, reimbursement of costs, and Plaintiffs' incentive awards.

**BACKGROUND**

Plaintiffs filed this class action against Acer based on the allegedly defective Acer notebook computer they purchased. Plaintiffs allege that because of the defective nature of the notebook computers, the notebooks have serious problems, including that they freeze during

1   use, crash, require frequent restarts and experience slow loading times. (Second Amended
2   Class Action Compl. ("SACAC"), ¶ 3.) According to Plaintiffs, the reason for these defects is
3   that Acer's notebook computers are sold with Microsoft® Vista Home Premium, Business, or
4   Ultimate operating systems (collectively, "Vista Premium") pre-installed, but the notebook
5   computers do not contain sufficient memory to properly run Vista Premium. (*Id.*, ¶¶ 2, 3.)
6   Plaintiffs brought claims against Acer for breach of express warranty and for violations of the
7   California Consumer Legal Remedies Act, California Civil Code sections 1750, *et seq.*
8   ("CLRA"), California Business and Professions Code sections 17500, *et seq.* ("False
9   Advertising Law" or "FAL"), California Business and Professions Code sections17200, *et seq.*
10  ("Unfair Competition Law" or "UCL"), and the Magnuson-Moss Warranty Act, 15 U.S.C. §§
11  2301, *et seq*.

12  On September 14, 2009, the Court granted in part and denied in part Acer's motion to
13  dismiss. The Court granted Acer's motion as to Plaintiffs' breach of implied warranty claim,
14  Magnuson-Moss Act claim to the extent it was premised on a breach of implied warranty, fraud
15  by omission claim, unjust enrichment claim, and claims under the CLRA, UCL and FAL. The
16  Court denied Acer's motion as to Plaintiffs' breach of express warranty claim and Magnuson-
17  Moss Act claim to the extent it was premised on a breach of express warranty. The Court
18  provided Plaintiffs leave to amend their claims under the CLRA, UCL and FAL to plead the
19  alleged misrepresentations more particularity. Plaintiffs filed an amended complaint in
20  accordance with the Court's order on October 1, 2009.

21  On March 25, 2011, the Court granted Plaintiffs' motion for class certification on the
22  condition that Plaintiffs file an amended complaint to comply with the Court-modified
23  definition of the class. Plaintiffs filed an amended pleading later that day. Acer requested but
24  was denied permission by the Ninth Circuit to appeal the Court's order granting class action
25  certification. Acer subsequently moved for leave to file a motion for reconsideration of the
26  Court's order granting class certification. The Court provided Acer leave to file the motion but
27  then denied the motion for reconsideration the merits.
28

2

1  The parties reached a settlement and, on January 16, 2003, Plaintiffs filed a motion for
2 preliminary approval of class action settlement. The Court issued an order raising several
3 concerns regarding the proposed settlement and required further briefing. In response, the
4 parties amended their proposed settlement. On April 11, 2003, the Court preliminarily
5 approved the settlement agreement.

6  Plaintiffs now move for final approval of the class action settlement and for attorneys'
7 fees, reimbursement of costs, and incentive awards. The Court will address Plaintiffs' motion
8 for final approval of the class action settlement in a separate order.

9  The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

This action asserted claims under California law and is premised on diversity jurisdiction. Therefore, California law governs the determination of attorneys' fees here. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The Court applies the lodestar method by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000). California courts have held that, "in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust the basic lodestar through the application of a positive or negative multiplier where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Id.* at 49-50. A percentage-of-the-benefit analysis "provides a credible

1  measure of the market value of the legal services," and therefore, may be used to cross-check
2  the propriety of the lodestar fee award. *Id*. at 49.

3        Here, three law firms represented Plaintiffs and expended 4633.2 hours litigating this
4  action. They seek $2,542,246.95 in attorneys fees and $172,753.05 in costs. The Court finds
5  that the amount Plaintiffs seek in attorneys' fees is not well supported. Upon review of the
6  attorneys' declarations, the Court finds that the attorneys were not efficient and that they spent
7  excessive amounts of time on the various tasks listed. Moreover, it appears as though there was
8  significant duplication of work between the three firms. All three firms, Pearson, Simon &
9  Warshaw, LLP ("PSW"), Hausfeld LLP ("Hausfeld"), and Gary, Naegele & Theado, LLC
10 ("GNT"), assert that they were involved in all aspects of the litigation, including: (1) pre-
11 litigation investigation and research; (2) opposing Acer's motion to dismiss and amending
12 Plaintiffs' complaints; (3) conducting pre-certification discovery and researching and drafting
13 Plaintiffs' motion for class certification; (4) opposing Acer's petition for permission to appeal
14 the Court's Class Certification Order and Acer's motion for reconsideration; and (5) settlement
15 related activities. (Declaration of Daniel W. Warshaw ("Warshaw Decl."), ¶ 3; Declaration of
16 James J. Pizzirusso ("Pizzirusso Decl."), ¶¶ 4-5); Declaration of Jori Bloom Naegele ("Naegele
17 Dec.").)

18       Counsel from all three firms conducted pre-litigation investigation, which included
19 examining the performance capabilities and specification of Acer's notebook computers, the
20 system memory requirements for Vista Premium and the experience of consumers with Acer's
21 notebook computers, as well as the facts relating to the experience of the named Plaintiffs and
22 their suitability as class representatives. (Warshaw Decl., ¶ 5; Pizzirusso Decl., ¶ 7; Naegele
23 Dec., ¶¶ 5-6.)

24       Counsel from PSW worked on drafting the class action complaint and the amended
25 complaints. (Warshaw Decl., ¶¶ 6, 12, 39.) So did attorneys at Hausfeld and GNT. (Pizzirusso
26 Decl., ¶¶ 8, 12; Naegele Dec., ¶¶ 7, 11.)

4

Counsel from all three firms worked on case management issues, including conferring with opposing counsel, preparing case management statements, and attending case management conferences. (Warshaw Decl., ¶¶ 8, 14, 15, 50; Pizzirusso Decl., ¶¶ 9, 13; Naegele Dec., ¶ 31.)

Counsel from all three firms worked on discovery, including preparing initial disclosures, drafting written discovery requests, meeting and conferring with opposing counsel, deposing Acer employees, and reviewing Acer's responses to the discovery requests. (Warshaw Decl., ¶¶ 16-21; Pizzirusso Decl., ¶¶ 14-17; Naegele Dec., ¶¶ 12-16, 19-20.) All three firms also conducted discovery on third parties Microsoft, Sutherland Global Services, and Electro Meridian Imaging. (Warshaw Decl., ¶¶ 22-25; Pizzirusso Decl., ¶¶ 18-22; Naegele Dec., ¶¶ 17-18.)

Counsel from all three firms opposed Acer's motion to dismiss, which included reviewing and analyzing the motion, researching and drafting the opposition brief, and preparing for oral argument and traveling to the hearing. (Warshaw Decl., ¶ 9-11; Pizzirusso Decl., ¶¶ 10-11; Naegele Dec., ¶ 10.)

Counsel interviewed potential experts and retained technical experts Ronald Alepin and Todd Stefan. (Warshaw Decl., ¶ 27; Pizzirusso Decl., ¶ 23; Naegele Dec., ¶ 21.) Counsel from PSW and Hausfeld consulted with these experts in connection with the motion for class certification and prepared for and defended their depositions. (Warshaw Decl., ¶¶ 29-30, 33; Pizzirusso Decl., ¶¶ 24-27, 29.)

Counsel from all three firms researched and drafted the motion for class certification, as well as the reply brief and supporting documents. (Warshaw Decl., ¶¶ 31-32, 36; Pizzirusso Decl., ¶¶ 27-28, 32; Naegele Dec., ¶¶ 22-24.) Counsel from PSW and Hausfeld also conducted discovery attendant with the certification motion and prepared for the hearing on the motion. (Warshaw Decl., ¶¶ 36-37; Pizzirusso Decl., ¶¶ 29-31, 33.)

After the Court certified the class, Counsel from all three firms responded to Acer's request for a stay and petition for permission to appeal. (Warshaw Decl., ¶¶ 40-42; Pizzirusso Decl., ¶¶ 35-36; Naegele Dec., ¶¶ 26-27.) The Ninth Circuit denied the petition. Counsel also

opposed Acer's motion for reconsideration of the order certifying the class. (Warshaw Decl., ¶¶ 44-49; Pizzirusso Decl., ¶¶ 37-38; Naegele Dec., ¶¶ 28-30.)

Counsel from all three firms worked on providing notice to the class. (Warshaw Decl., ¶¶ 51-53; Pizzirusso Decl., ¶¶ 40-42, 53; Naegele Dec., ¶¶ 37, 40.)

Counsel from all three firms prepared for and participated in mediation, as well as the follow up negotiations which led to the settlement. (Warshaw Decl., ¶¶ 55-61; Pizzirusso Decl., ¶¶ 43-49; Naegele Dec., ¶¶ 32-37.) Counsel from all three firms researched and drafted the motions related to the settlement, including the motion for preliminary approval, the motion for attorneys' fees, and the motion for final approval. Counsel also revised the settlement in response to concerns from the Court. (Warshaw Decl., ¶¶ 62-71; Pizzirusso Decl., ¶¶ 50-51, 55-56; Naegele Dec., ¶¶ 38-39, 42-43.)

Counsel from the three firms spent a combined exorbitant 547.7 hours on attorney meetings and strategy, 184.2 hours on Court appearances despite the fact that the Court vacated all hearings except for the one on Plaintiffs' motions for final approval of class action settlement and for attorneys fees, 1,291.35 hours on discovery, 176.75 hours working and consulting with experts, 1,506.8 hours on pleadings and motions, and 624.95 hours on settlement. (Warshaw Decl., ¶ 74; Pizzirusso Decl., ¶ 58; Naegele Decl., ¶ 45.) Taking into consideration of the nature of the claims and the motions that were filed, the Court finds that it would have been reasonable to expend 150 hours on attorney meetings and strategy, 25 hours on Court appearances, 550 on discovery, 150 hours on working and consulting with experts, 625 hours on pleadings and motions, and 250 hours on settlement. In total, the Court finds that it would have been reasonable to spend 1750 hours on litigating and settling this action, which is a reduction of 62 percent from the requested 4633.2 hours.[1]

---

[1] After Plaintiffs filed their motion for attorneys' fees, counsel then spent an additional 208.20 hours combined since July 6, 2013, presumably in preparing and filing the motion for final approval of the class action settlement. (Supplemental Declaration of Daniel W. Warshaw ("Suppl. Warshaw Decl."), ¶ 5; Supplemental Declaration of James J. Pizzirusso ("Suppl. Pizzirusso Decl."), ¶ 5); Supplemental Declaration of Jori Bloom Naegele ("Suppl. Naegele Dec."), ¶ 5.) Again, that amount is excessive. Counsel do not describe what was done during these hours. Nor do they state who from their respective firms conducted the work included in these hours. Although some amount of work would

6

Next, the Court finds that Class Counsel did not demonstrate that their requested hourly rates were reasonable. In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *See Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district sits." *Camacho v. Bridgeport Financial, Inc.*, 523 F. 3d 973, 979 (9th Cir. 2008). The relevant market community here is the Northern District of California (the "Northern District").

The Ninth Circuit has recognized that "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult." *Camacho*, 523 F. 3d at 979 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). In determining the appropriate market rate, the Court should examine the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id*. (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). The Court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Plaintiffs bear the burden of "produc[ing] satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho*, 523 F. 3d at 980. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

---

have been reasonable in preparing and filing the motion for final approval, without a description of what was done and who did the work, the Court cannot determine what a reasonable number of hours would be or what rate at which such work should be compensated. However, in determining what was a reasonable number of hours described above, including for motions and court appearances, the Court took into consideration the preparation and filing of the motion for final approval of the class action settlement.

7

1 The Court finds that Class Counsel have not met their burden to produce satisfactory 2 evidence that their requested rates are in line with those prevailing in the Northern District for 3 similar services. As evidence that other courts have approved their requested rates, the sole 4 case PSW and Hausfeld provided within the Northern District conducted a percentage-of-the-5 benefit analysis. Therefore, the court in that case did not approve the requested rates. The other 6 cases PSW and Hausfeld provided as evidence were all out of district cases, and, thus, are not 7 relevant to determining rates within the relevant market community. GNT did not provide 8 evidence of any courts awarding its requested rates. Moreover, the statements within the 9 attorneys' declarations are insufficient evidence. Mr. Warshaw declares that the "hourly rates 10 charged by PSW are consistent with the rates in the Los Angeles and San Francisco legal 11 community for attorneys of similar caliber and experience." (Warshaw Decl., ¶ 81.) Mr. 12 Pizzirusso declares that the "the hourly rates charged by Hausfeld LLP are consistent with the 13 rates in the Washington, DC and San Francisco, CA legal communities for attorneys of similar 14 caliber and experience." (Pizzirusso Decl., ¶ 64.) Ms. Naegele declares that "the hourly rates 15 charged by GNT reflect the market rates in the markets within which GNT's office is located 16 and from which this matter has been handled: Northeastern Ohio." (Naegele Decl., ¶ 49.) None 17 of these attorneys attest to what the market rates are in the *Northern District* for *similar work* 18 performed by attorneys of comparable skill, experience, and reputation. Nor did counsel 19 provide a declaration from any other attorney in the Northern District regarding the relevant 20 market rates.

21 Although it is evident that counsel are experienced in their fields and are well respected, 22 the Court finds the rates requested are excessive for the work done on these proceedings. The 23 Court notes that while the facts underlying Plaintiffs' claims were technically complicated, the 24 legal analysis regarding their warranty and misrepresentation claims was not complex. Thus, 25 the Court will discount their hourly billing rates as follows: $550.00 for time spent by senior 26 partners, $500 for work done by partners, $400 for work done by senior associates, $350 for 27 work done by associates, and $175 for work done by paralegals and law clerks.

28

8

1    Class Counsel did not inform the Court on what tasks each attorney, paralegal or law
2    clerk worked. Accordingly, to calculate the lodestar, the Court will reduce each attorney's hours
3    by 62 percent (the total amount by which the Court reduced counsels' hours) and multiply that
4    number by the appropriate hourly billing rate. Pursuant to these calculations, PSW's lodestar is
5    $475,422.20, Hausfeld's lodestar is $513, 248.40, and GNT's lodestar is $268, 952.13, for a
6    total of $1,257,622.73.

7    The Court finds that a multiplier to increase the lodestar is not warranted. However, the
8    Court will exercise its discretion to adjust the lodestar by a negative multiplier to ensure that the
9    "fee awarded is within the range of fees freely negotiated in the legal marketplace in
10   comparable litigation." *Lealao*, 82 Cal. App. at 49-50. Class Counsel estimate the value of the
11   benefits conferred upon the class is $1,428,841.60. (Declaration of Daniel L. Warshaw in
12   support of motion for final approval, ¶ 14.) This includes $888,841.28 in relief to claimants
13   under the settlement, $269,000.32 in notice costs, and $271,000 in claims administration costs.
14   (*Id.*) Taking into account the costs and incentive awards as determined below, as well as the
15   estimated value of the benefits to the class, a fee award of $1,257,622.73 would amount to
16   approximately 44 percent under a percentage-of-the-benefit analysis. This is well above the 25
17   percent benchmark award. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.
18   13 (2009). Using a multiplier of 0.75 would reduce the fee award down to $943,217. This
19   amount would be approximately 33 percent under a percentage-of-the-benefit analysis, an
20   amount which is more in line with most fee awards under California law. *Id.* The Court finds
21   that an award of $943,217 is within the range of fees that would be freely negotiated in the legal
22   marketplace for comparable litigation.

23   Counsel are entitled to reimbursement of their reasonable out-of-pocket expenses. *See*
24   Fed. R. Civ. P. 23(h); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D.
25   Cal. 1995) (approving reasonable costs in class action settlement). Counsel seek the
26   reimbursement of costs in the amount of $172,753.05. (Warshaw Decl., ¶¶ 82-83, Ex. 10-11;
27   Pizzirusso Decl., ¶ 65, Ex. I; Naegele Decl., ¶ 50, Ex. C.) Upon review of the declarations and
28   attached exhibits, the Court finds that most of the requested expenses are reasonable and should

1  be reimbursed. However, counsel only submitted evidence supporting expenses of $98,971.53
2  out of the $99,000 in the litigation fund collected for this action. (Warshaw Decl., ¶ 83, Ex. I.)
3  Therefore, the Court will deduct $28.47 from the requested fees. Moreover, Mr. Pizzirusso
4  seeks $119 for education, seminars and training, $298.14 in miscellaneous expenses and
5  $187.50 in purchased services. The Court will not reimburse Counsel for the costs of education
6  and training. Because it is not clear what is included in the miscellaneous expenses and
7  purchased services, the Court will not provide reimbursement for these categories either.
8  Finally, Ms. Naegele includes a request to be reimbursed for outside professional fees in the
9  amount of $351.14. Because it is not clear what the expense was, the Court cannot determine
10 that it would be appropriate to provide reimbursement for it. Therefore, the Court awards
11 counsel costs in the sum of $171,768.80.

12 Plaintiffs also request that the Court approve an incentive payment in the amount of
13 $5,000.00 to be awarded to each named plaintiff. "Incentive awards are fairly typical in class
14 action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).
15 However, the decision to approve such an award is a matter within the Court's discretion. *In re*
16 *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). In general, an incentive award
17 is designed to "compensate class representatives for work done on behalf of the class, to make
18 up for financial or reputational risk undertaken in bringing the action, and, sometimes, to
19 recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

20 Lora and Clay Wolf each submitted a declaration in which they attest that they spent
21 approximately 107.25 and 106.25 hours, respectively, on this case. (Declaration of Lora Wolf,
22 ¶ 16; Declaration of Clay Wolf, ¶ 16.) Lora and Clay Wolf both attest that they had to take time
23 off from their work, including to travel from Fostoria, Ohio to Findlay, Ohio for a deposition,
24 but do not specify the amount of time they were unable to work due to their involvement in this
25 case. (Declaration of Lora Wolf, ¶ 7; Declaration of Clay Wolf, ¶ 7.) Both Lora and Clay Wolf
26 provided their Acer notebook computers to their counsel and have been unable to use them
27 since 2009. Therefore, they each had to purchase another laptop computer. (Declaration of
28 Lora Wolf, ¶ 16; Declaration of Clay Wolf, ¶ 16.) The Ninth Circuit recently reiterated that

"district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. ... [C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal citation and quotation marks omitted). Apart from the unspecified lost income and loss of their Notebooks, Lora and Clay Wolf do not suggest that they undertook any great risk to either their finances or to their reputation in bringing this action. The Court concludes that incentive awards are appropriate but not in the amount requested. Accordingly, the Court grants the request for incentive awards in the amount of $2000.00 each.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, the motion for attorneys fees, costs, and incentive awards. Plaintiffs are awarded $943,217 in attorneys' fees, $171,768.80 in costs, and $4,000 in incentive awards.

**IT IS SO ORDERED.**

Dated: October 21, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE